No. 95-274

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF K.F.L. and N.L.,

Youths in need of care.

FILED

JAN 30 1996

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Christopher Daly, Missoula, Montana

        For Respondent:

        Joseph P. Mazurek, Attorney General, Barbara Harris,
        Assistant Attorney General, Helena, Montana; Robert
        Deschamps, III, Missoula County Attorney, Leslie
        Halligan, Deputy Missoula County Attorney, Missoula,
        Montana; Kathleen Foley, Missoula, Montana


                   Submitted on Briefs:   December 14, 1995

                            Decided:   January 30, 1996

Filed:

                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

P.L., the mother of the children, appeals from the Findings of Fact, Conclusions of Law and Order of the District Court for the Fourth Judicial District, Missoula County, terminating her parental rights. We affirm.

The sole issue raised on appeal is:

Did the District Court err in terminating the parental rights of P.L. as to her two oldest children, K.F.L. and N.L.?

## Background Facts

K.F.L., born May 26, 1988, was alleged to be a youth in need of care because of reports that she was not being cared for by P.L. These reports indicated that P.L. was drinking, that she would forget to feed K.F.L., that on at least two occasions she gave K.F.L. alcohol to drink, that she was engaging in sexual activities with juveniles in her home, and that she had been evicted from her home because she had too many disturbing visitors at night. For these reasons, the State filed a Petition for Temporary Investigative Authority and Protective Services in October 1989.

Prior to that time, P.L. had been charged with sexual intercourse without consent involving a 14-year-old boy, tampering with a witness, endangering the welfare of a child, and criminal trespass. The charges of witness tampering and endangering the welfare of a child were dropped in exchange for P.L.'s guilty plea and she was sentenced to ten years in prison. The sentence was suspended.

On April 3, 1990, the State filed a Petition for Temporary

2

Custody of K.F.L. The District Court declared K.F.L. to be a youth in need of care and on August 8, 1990, the court granted temporary custody to the Department of Family Services (DFS) for one year. A second child, N.L., was born on November 16, 1990.

P.L. completed Phase I of a treatment plan and K.F.L. was returned to her care on March 14, 1991. However, by July 29, 1991, a social worker reported that Phase II of the treatment plan had not been completed in that P.L. and S.W., P.L.'s husband at that time, were not maintaining the home or protecting K.F.L. from abuse from others. The social worker also reported that P.L. and S.W. had not taken K.F.L. to a physician "in a timely way." The State's petition for an extension of temporary custody was granted. In March of 1992, a third child, A.W., was born.

In February 1993, S.W. was charged with incest and sexual intercourse without consent involving K.F.L. He pleaded guilty to the incest charge and received a twenty-year sentence with fifteen years suspended. The charge of sexual intercourse without consent was dismissed.

On May 29, 1993, P.L. allowed K.F.L. and N.L. to visit their maternal grandparents in Wyoming. At the end of their visit, the grandparents refused to return the children to P.L. In August 1993, P.L. moved the District Court to have K.F.L. and N.L. returned from Wyoming. The court granted her motion, however, the children's return was delayed until after P.L. delivered her fourth child, D.W., in September 1993. Within two weeks, P.L. requested that K.F.L. and N.L. be returned to her parents in Wyoming. She

3

also placed the two youngest children with a private foster home and admitted herself to the psychiatric unit at St. Patrick's Hospital in Missoula for four days.

On December 9, 1993, P.L. again moved to have K.F.L. and N.L. returned to her. Following a hearing on January 3, 1994, the District Court ordered that K.F.L. and N.L. remain in Wyoming with their maternal grandparents until further order of the court. A new treatment plan was implemented in February 1994 involving P.L. and P.L.'s boyfriend.

On May 12, 1994, P.L.'s suspended sentence was revoked and she was ordered to serve the rest of her sentence in the Women's Correctional Facility. Subsequently, the State filed a Petition for Permanent Legal Custody with Right to Consent to Adoption and Termination of Parental Rights alleging that P.L. had never completed the 1990 treatment plan, nor had she completed the current treatment plan.

After a hearing on November 1, 1994, the District Court issued its Findings of Fact, Conclusions of Law and Order terminating P.L.'s parental rights to all four children. P.L. appeals this decision as to K.F.L. and N.L.

## Standard of Review

The standard of review to be used in cases involving a youth in need of care and the termination of parental rights is whether the district court interpreted the law correctly and whether the district court's findings of fact are clearly erroneous. Matter of J.J.G. (1994), 266 Mont. 274, 281, 880 P.2d 808, 812 (citing Matter

4

of D.H. and F.H. (1994), 264 Mont. 521, 524-25, 872 P.2d 803, 805).

## Discussion

Did the District Court err in terminating the parental rights of P.L. as to her two oldest children, K.F.L. and N.L.?

The District Court concluded that K.F.L. and N.L. were youths in need of care pursuant to § 41-3-102, MCA, that P.L. had not complied with the court-approved treatment plan, and that P.L.'s conduct or condition rendering her unfit was unlikely to change within a reasonable time. Based on these conclusions and pursuant to § 41-3-609(1)(c), MCA, the District Court ordered that P.L.'s parental rights be terminated.

Section 41-3-609, MCA, lists the criteria the court must consider in terminating the parental rights of an individual. This statute provides, in part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
> . . .
> (c) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court *has not been complied with* by the parents or has not been successful; and
> (ii) *the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time* . . . . [Emphasis added.]

In its extensive findings and conclusions, the District Court determined that P.L. had not complied with the February 1994 treatment plan because she failed to provide suitable housing for the children, obtain either part-time or full-time employment, or maintain consistent contact with the children. The District Court concluded that the conduct or condition rendering P.L. unfit is

5

unlikely to change within a reasonable time and that continuation of the parent-child relationship will likely result in continued abuse or neglect of the children. In making this determination, the District Court applied the factors set forth in § 41-3-609(2), MCA, to the facts in this case and concluded:

> a. [P.L.'s] emotional or mental illness renders her unlikely to care for the ongoing physical, mental and emotional needs of the children within a reasonable time;
> b. [her] excessive use of intoxicating liquor affects her ability to care and provide for the children;
> c. [her] judicially ordered long-term confinement;
> d. reasonable efforts by protective service agencies over the last six or seven years have been unable to rehabilitate her; and
> e. [her] failure to contact her children regularly, her failure to complete the treatment plan ordered in January.

P.L. contends that she was in substantial compliance with the treatment plan because she had completed seven of the nine requirements. She further contends that the State could have and should have adopted a treatment plan for her while she was incarcerated. P.L. has voluntarily taken advantage of several of the programs available to her in prison and she maintains that this negates the District Court's determination that the conduct or condition rendering her unfit is unlikely to change within a reasonable time.

The State contends that P.L. did not substantially comply with the treatment plan. The two requirements of the plan that P.L. failed to complete, providing suitable housing for the children and obtaining employment, were basic requirements necessary to protect and care for her children. Because P.L. is incarcerated, these two requirements cannot be completed until she is released. Providing

6

a treatment plan for P.L. while she is incarcerated would fail to address these two basic requirements.

Furthermore, § 41-3-609(4)(b), MCA, provides that a treatment plan is not required if "the parent is incarcerated for more than 1 year and a treatment plan is not practical considering the incarceration." This section recognizes that a child may need help while a parent is incarcerated and that such help cannot be delayed pending the parent's release. Matter of D.G. (1990), 244 Mont. 17, 21, 795 P.2d 489, 491. P.L. has had ample opportunity in the five years since the State first requested temporary investigative authority of K.F.L. to prove whether she is capable of properly caring for her children and she has failed to do so.

Contrary to P.L.'s assertions that her prior history should not have been considered by the District Court and that only her performance under the latest treatment plan is relevant, the State maintains, and we agree, that a complete history is relevant to the issue raised herein. The District Court did not err by basing its decision on the long history of neglect and abuse of K.F.L. and N.L.

The District Court was bound to give primary consideration to the physical, mental and emotional conditions and needs of the children. Section 41-3-609(3), MCA; In re Custody of T.M. (1994), 267 Mont. 75, 79, 881 P.2d 1333, 1336.

At the November 1, 1994 hearing, two social workers that had previously worked with P.L. recommended that P.L.'s parental rights be terminated as her ability to parent her children would not

7

change within a reasonable time given her previous patterns of behavior. The State also presented two reports from K.F.L.'s and N.L.'s therapist recommending that K.F.L. and N.L. be adopted by or permanently placed with their maternal grandparents.

We conclude that the District Court's findings are supported by substantial evidence in the record and are, therefore, not clearly erroneous. Moreover, the District Court correctly applied § 41-3-609, MCA, in evaluating the evidence before it.

Accordingly, we hold that the District Court was correct in terminating the parental rights of P.L.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8