No. 97-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 135

IN RE DECLARING E.W., C.W., AND A.W.
Youths in Need of Care.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel P. Buckley; Berg, Lilly, Androlio & Tollefson, P.C.;
Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Stephen C. Bullock, Assistant Attorney General;
Helena, Montana

Marty Lambert, Gallatin County Attorney;
Gary Balaz, Deputy County Attorney; Bozeman, Montana

For Guardian Ad Litem:

Todd Hillier, Attorney at Law, Bozeman, Montana

Submitted on Briefs: April 16, 1998

Decided: June 2,
1998
Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1     J.A. appeals from an order of the Eighteenth Judicial District Court, Gallatin County, terminating her parental rights over E.W., C.W., and A.W. For the reasons stated below, we affirm.  The sole issue on appeal is whether the District Court erred in terminating J.A.'s parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

¶2     J.A. and L.W. married in 1986, and are the natural parents of E.W., C.W., and A.W., the three minor children involved in the present matter. Their first child, E.W., was born on November 22, 1988.  The Department of Public Health and Human Services, formerly the Department of Family Services, first began providing services to J.A. in June 1989 when E.W. was seven months old.  On September 1, 1989, J.A. and the Department entered into a service treatment agreement designed to help J.A. provide proper care for her son.  On October 15, 1990, the Department filed a petition for temporary investigative authority and emergency protective services.  The court issued an order for emergency protective services, and appointed a guardian ad litem for E.W.  At the October 30, 1990, show cause hearing, the parties informed the court they had reached an agreement, and the Department entered into a service treatment plan with J.A. and L.W.  The District Court issued an order granting the Department temporary investigative authority over E.W. for the six-month period due to expire on January 30, 1991.  The parties subsequently agreed to terminate supervision, and on January 14, 1991, the District Court terminated the matter.

¶3     J.A. and L.W. had their second child, C.W., on August 4, 1991.  Their third child, A.W., was born nearly a year later, on July 1, 1992.  J.A. and L.W. divorced in 1993, and J.A. married T.A. on July 17, 1994.  The record indicates there were numerous referrals during this period of time, and the Department thus continued its involvement with J.A.

¶4     On July 14, 1994, the Department filed a second petition in response to a referral of physical, emotional, and medical neglect, this time seeking temporary investigative authority and protective services for E.W., C.W., and A.W.  T.A. subsequently left the state, thereby violating the conditions of his probation, and J.A. was evicted from her apartment in August 1994.  The children were placed in foster care on August 19, 1994, where they have since remained.  On August 30, 1994, the District Court entered an order granting the Department's petition for temporary investigative authority and protective services for a six-month period.

¶5     On September 28, 1994, J.A. entered into a court ordered contract and treatment plan designed to "reunite the family by helping [J.A.] learn appropriate parenting skills and how to provide a safe environment for the children."  On February 22, 1995, the Department filed a petition seeking temporary custody for an additional six-month period, on the grounds that J.A. had failed to fulfill her obligations under the September 1994 treatment plan. The court granted the Department's petition on March 14, 1995, providing the Department with another six-month period of temporary custody, and ordering

that J.A. "successfully complete her treatment plan."

¶6    Six months later, the Department again petitioned the court to extend its temporary custody over E.W., C.W., and A.W. for an additional six months and asked for a revised treatment plan.  In support of its September 11, 1995, petition, the Department cited to J.A.'s continuing failure to complete the requirements of her existing treatment plan.   The parties agreed to another six-month period of temporary custody, and on September 20, 1995, the District Court entered an order continuing the Department's temporary custody until March 1996.  The District Court appointed counsel for J.A., and the parties negotiated a revised contract and treatment plan, approved by the court on January 10, 1996.

¶7    On April 19, 1996, the Department filed a petition to terminate J.A.'s parental rights. Arguing J.A. had failed to comply with the requirements of her January 1996 treatment plan, the Department sought to terminate J.A.'s parental rights on the stated grounds "that the treatment plan has not been successful and the mother's conduct or condition rendering her unfit is unlikely to change within a reasonable time."

¶8    In May 1996, the District Court conducted a five-day hearing on the petition to terminate parental rights.  On June 3, 1997, the court issued its findings of fact, conclusions of law, and order, terminating J.A.'s parental rights to E.W., C.W., and A.W.  It is from the District Court's order terminating her parental rights that J.A. presently appeals.

                    STANDARD OF REVIEW

¶9    We review a district court's decision to terminate parental rights to determine whether the court interpreted the law correctly and whether its findings of fact are clearly erroneous.  In re K.F.L. and N.L. (1996), 275 Mont. 102, 104, 910 P.2d 241, 243.

¶10   In In re D.H. and F.H. (1994), 264 Mont. 521, 524, 872 P.2d 803, 805, we clarified the standard of review for cases involving a youth in need of care and termination of parental rights.  The appropriate standard of review to be applied to purely factual findings in a termination of parental rights proceeding is the clearly erroneous standard as set forth in Interstate Production Credit Association v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.  In DeSaye, we explained that, pursuant to the clearly erroneous standard of review,

     [f]irst, the Court will review the record to see if the findings are
     supported by substantial evidence.  Second, if the findings are
     supported by substantial evidence we will determine if the trial
     court has misapprehended the effect of the evidence. Third, if
     substantial evidence exists and the effect of the evidence has not
     been misapprehended the Court may still find that "[A] finding
     is 'clearly erroneous' when, although there is evidence to support
     it, a review of the record leaves the Court with the definite and
     firm conviction that a mistake has been committed."  U[nited]
     S[tates] v. U.S. Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525,
     92 L.Ed. 746.

DeSaye, 250 Mont. at 323, 820 P.2d at 1287 (citations omitted).

¶11   We review conclusions of law in a termination proceeding to determine if those conclusions are correct.  In re D.H. and F.H., 264 Mont. at 525, 872 P.2d at 805.

¶12   This court has recognized that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures."  In re R.B., Jr. (1985), 217 Mont. 99, 103, 703 P.2d 846, 848. Accordingly, prior to terminating an individual's parental rights, the district court must adequately address each applicable statutory requirement. In re R.B., Jr., 217 Mont. at 103, 703 P.2d at 848.  Moreover, "the party seeking termination must present clear and convincing evidence to the district court that the prerequisite statutory criteria for termination have been met."  In re J.L., D.L., and A.G. (1996), 277 Mont. 284, 288, 922 P.2d 459, 461.

¶13   In the context of parental rights termination cases, we have defined clear and convincing evidence as

        simply a requirement that a preponderance of the evidence be
        definite, clear, and convincing, or that a particular issue must be
        clearly established by a preponderance of the evidence or by a
        clear preponderance of the proof.  This requirement does not
        call for unanswerable or conclusive evidence.

In re J.L., D.L., and A.G., 277 Mont. at 289, 922 P.2d at 462 (quoting In re Interest of S.M.Q. (Kan. 1990), 796 P.2d 543, 545).

¶14   We presume that the district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion.  In re J.R. and S.D. (1992), 253 Mont. 434, 440-41, 833 P.2d 1063, 1067; In re J.J.C.H. and C.M.H. (1992), 252 Mont. 158, 162, 827 P.2d 812, 815.

                              DISCUSSION

¶15   Did the District Court err in terminating J.A.'s parental rights?

¶16   The Department petitioned to terminate J.A. parental rights pursuant to § 41-3-609(1)(c), MCA (1995) (since renumbered § 41-3-609(1)(e), MCA), which provided as follows:

        The court may order a termination of the parent-child legal relationship upon
        a finding that any of the following circumstances exist:
            (c) the child is an adjudicated youth in need of care and both of the
        following exist:
            (i) an appropriate treatment plan that has been approved by the court
        has not been complied with by the parents or has not been successful; and
            (ii) the conduct or condition of the parents rendering them unfit is
        unlikely to change within a reasonable time.

¶17  Relying on § 41-3-609(1)(c), MCA (1995), the Department sought to terminate J. A.'s
parental rights due to her alleged failure to comply with the January 1996 treatment plan, and
on the grounds "that the treatment plan has not been successful and the mother's conduct or
condition rendering her unfit is unlikely to change within a reasonable time."

¶18  In its June 3, 1997, order terminating J.A.'s parental rights, the District Court
concluded that "[a]ll of her treatment plans have met with mixed results, but [J.A.] cannot
parent these children in the near or distant future."  The court also concluded the termination
of J.A.'s parental rights was warranted because it was "not in the interests of these children's
physical, mental and emotional needs to place them on hold any longer."

¶19  On appeal, J.A. argues the court erred in so concluding, and generally asserts that,
because the Department failed to meet its burden of presenting clear and convincing evidence
in support of its petition for termination, the court's findings of fact are thus clearly
erroneous, and its conclusions of law incorrect.  More specifically, J.A. argues the court
improperly disregarded testimony by a number of professionals who opposed the termination
of her parental rights and instead "supported the return of the children."  J.A. asserts the
evidence of record, including testimony by all three professionals integrally involved in the
case, demonstrates that she complied with the January 1996 treatment plan, and that the
treatment plan was successful.  Based on the foregoing, J.A. argues the evidence of record
demonstrates "by clear and convincing proof that [J.A.] is a competent mother," and asserts
the court erred in concluding J.A. is unfit to parent her children and in terminating her
parental rights.

¶20  In support of her argument that the 1996 treatment plan was successful, J.A. relies in
part upon the testimony of counselor Barbara Boik, who explained that, were J.A. to "have
a good support system in line and get the help that she needed," Boik "would really like to
see the children with her."  J.A. also points generally to testimony by Eleanor Truitt, a

licensed clinical social worker, who explained that she believed J.A. could, with proper help, parent her children, and that the children should thus "be able to return to their mother." J.A. also relies upon the opinion of case aid Joyce VanderVoort who testified that because J.A. had made a concerted effort to improve her parenting skills, she was deserving of a chance to "use the skills." Moreover, J.A. notes that clinical psychologist Dr. McElhinny, although called as a witness by the Department, conceded that the opinions expressed by Boik, Truitt, and VanderVoort regarding the placement of the children would be important. Finally, J.A. points to similar testimony by clinical social worker Suzy Saltiel who stated that she "would like to see these children with their mother." Pointing to testimony by the foregoing individuals, J.A. argues that all of the professionals who "were integral to the treatment plan" believed she had successfully completed the plan and supported the return of her children.

¶21  The Department, in response, points to contrasting testimony by a number of witnesses who expressed their ongoing concerns about J.A.'s ability to parent her children, and who concluded that the treatment plan had been unsuccessful. For example, the Department notes that Meg Babits, the children's guardian ad litem, expressly testified that, in her opinion, "[t]he treatment plan has not been successful." The Department also relies upon testimony by social worker Elizabeth Hoyt-Leonard, who explained that she did not think the January 1996 treatment plan had been effective. The Department additionally points to testimony by Steven Ware, a member of J.A.'s treatment team, who explained that he continued to have concerns about J.A. neglecting her children and not being able to look out for their emotional well-being. The Department also relies upon the opinion of Ellen Berglund, the children's trained therapeutic foster mother, who testified that she thought J.A. was unable to change and had neglected to remedy the circumstances that led to the removal of her children. Finally, the Department notes that Dr. James Feist, the children's pediatrician for nearly six years, testified that the children were "high needs" children, and that J.A. did not have the ability to "respond to their needs."

¶22  As demonstrated by the parties' respective arguments, the record contains conflicting evidence and testimony with regard to the success or failure of J.A.'s 1996 treatment plan.

Under these circumstances, it is not our function on appeal to reweigh the conflicting
evidence of record, substitute our "evaluation of the evidence for that of the trial court, or
pass upon the credibility of the witnesses."  In re J.L., 277 Mont. at 290, 922 P.2d at 462
(quoting In re Interest of S.M.O. (Kan. 1990), 796 P.2d at 545.)  That there exists conflicting
evidence of record "does not automatically preclude a finding that clear and convincing
evidence to support a given position exists."  In re J.L., 277 Mont. at 290, 922 P.2d at 462.

¶23  In its order terminating J.A.'s parental rights, the District Court recognized that the
record contained conflicting evidence regarding J.A.'s ability to parent her children, as well
as the success or failure of her January 1996 treatment plan.  The court made 284 findings
of fact, many of which chronicled conflicting testimony by various witnesses regarding the
implementation and success of the treatment plan at issue.  For example, the court recounted
testimony by Babits and Hoyt-Leonard, each of whom believed that the 1996 treatment plan
had not been effective or successful.  The court did acknowledge, however, that there existed
conflicting testimony by a number of individuals.  For example, the court recognized in its
findings of fact that Boik believed "the children would be better off with their mother, so
long as she had a support system around her."  The court also acknowledged that Truitt "was
of the opinion that [J.A.] could parent her children with help" and that "[s]he favored a return
of the children to [J.A.], so long as [J.A.] received parenting aid, and respite day care."
Finally, the court noted that VanderVoort thought J.A. deserved a chance to use her newly
acquired skills and parent her children with support from the Department.

¶24  Thus, although J.A. argues the District Court failed to give proper consideration to
testimony by Boik, Truitt, and VanderVoort, review of the District Court's lengthy findings
of fact indicates otherwise.  The court clearly considered the testimony of each witness
before concluding that all of J.A.'s treatment plans, including the 1996 treatment plan, had
"met with mixed results, but [J.A.] cannot parent these children in the near or distant future."
After considering all of the evidence before it, the court concluded that J.A.,

the mother of these three children, by proof beyond all doubt, will never be a competent mother. She has been given every service available by the department. Although it is true, the department should have stepped in much sooner, given her services and then terminated her rights if she could not improve, the fact still remains that she will never be able to parent these three children adequately, given the intensive parenting they require and her level of parenting skills.

¶25 Review of the District Court's findings of fact and conclusions of law indicates it did not, as J.A. suggests, "ignore[] the recommendation of the three primary professionals who were integral to and a part of the treatment plan." Instead, the court evaluated all pertinent evidence and testimony before effectively concluding J.A.'s treatment plan had been unsuccessful, and ordering the termination of J.A.'s parental rights. Having reviewed the record and the District Court's order, we conclude the court's findings of fact are supported by substantial evidence, and are not clearly erroneous. We hold the court did not err in concluding that J.A.'s treatment plan had met with only "mixed results" and was thus unsuccessful.

¶26 As noted above, J.A. also argues that the evidence of record demonstrates she complied with the January 1996 treatment plan, and suggests the court thus erred in concluding she was unfit to parent her three children. Pursuant to § 41-3-609(1)(c), MCA (1995), a court may order the termination of parental rights upon a finding that a court-approved treatment plan has been unsuccessful or has not been complied with, and a finding that "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." In other words, "a parent must not only comply with the treatment plan, but the treatment plan must also be successful." In re S.C. (1994), 264 Mont. 24, 29, 869 P.2d 266, 269.

¶27 In the present case, the Department expressly petitioned to terminate J.A.'s parental rights on the grounds "that the treatment plan has not been successful and the mother's conduct or condition rendering her unfit is unlikely to change within a reasonable time." In light of our determination that the District Court correctly concluded that J.A.'s treatment plan had met with only mixed results, and was thus unsuccessful, whether J.A. complied with the 1996 treatment plan is immaterial. Accordingly, we decline to address J.

A.'s
argument that she in fact complied with the requirements of the January 1996 treatment plan
and that the District Court thus erred in terminating her parental rights.

¶28  Section 41-3-609(1)(c), MCA (1995), also required that to order the termination of
parental rights a district court must find "the conduct or condition of the parents rendering
them unfit is unlikely to change within a reasonable time."  That the District Court in this
case evaluated this statutory requirement is evidenced by its conclusion that, "by proof
beyond all doubt," J.A. "will never be a competent mother" and "will never be able to parent
these three children adequately, given the intensive parenting they require and her level of
parenting skills."


¶29  On appeal, J.A. generally argues it was error for the court to conclude she was, and
would continue to be, an unfit mother.  Having reviewed the record, however, we hold
otherwise.  As it did with respect to the implementation of J.A.'s treatment plan, the court
made numerous findings of fact regarding her ability to parent her children.  For example,
the court pointed to testimony from various witnesses which indicated J.A. had failed to
maintain regular visitation, did not properly medicate her children, missed medical
appointments, dressed her children inappropriately, did not wake up in the morning to care
for her children, and failed to pick them up after school.  Moreover, the court noted the
Department's six-year involvement with J.A. and her children, concluding she had "been
given every service available by the department" but was still unable to properly parent her
children.  Having reviewed the record, we conclude the court's findings of fact are supported
by substantial evidence, and are not clearly erroneous.  We hold the court did not err in
effectively concluding the conduct or condition which rendered J.A. unfit to parent her
children was unlikely to change within a reasonable time, and on that basis ordering the
termination of her parental rights.

¶30  Based on the foregoing, we affirm the order the District Court, and hold the court did
not err in terminating J.A.'s parental rights on the grounds that her treatment plan had been

unsuccessful and the conduct rendering her unfit was unlikely to change within a reasonable
time.

/S/  JIM REGNIER


We Concur:


/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER