No. 97-726

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 157

IN RE A. W-M.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lawrence LaFountain, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Mark Mattioli,

Assistant Attorney General; Helena, Montana

Brant Light, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs: May 28, 1998

Decided: June 23, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1 M.M. appeals from an order of the Eighth Judicial District Court, Cascade County, terminating her parental rights over her daughter, A.W-M. For the reasons stated below, we affirm. The sole dispositive issue on appeal is whether the District Court erred in terminating M.M.'s parental rights.**

FACTUAL AND PROCEDURAL BACKGROUND

**¶2 A.W-M. was born on March 30, 1996, to M.M., her biological mother, and M.W., her biological father. In April 1996, the Department of Public Health and Human Services (Department) received "four referrals with concerns as to [M.M.'s] ability to care for her infant daughter [A.W-M.] or to provide her with a home." During the week of July 8, 1996, the Department received two more referrals "alleging [M.M.] was leaving [A.W-M.] for days at a time with caretakers while she was out partying." On July 12, 1996, A.W-M. was placed in foster care for a brief period.**

**¶3 On July 23, 1996, the Department filed a petition with the Eighth Judicial District Court for temporary investigative authority and protective services. On July 31, 1996, the court issued an order for protective services, and appointed a guardian ad litem for A.W-M. The court held a show cause hearing on September 5, 1996, during which both M.M. and M.W. agreed to participate in a court-ordered treatment plan. On September 23, 1996, the court issued an order granting the Department's petition for temporary investigative authority for a ninety-day period, and ordering that M.**

M. and M.W. complete a treatment plan designed to "[p]reserve, if possible, the parent child relationship between [A.W-M.] and her parents." Among the treatment plan's requirements were that M.M. provide her daughter with "a safe and stable home," undergo a psychological assessment, complete a chemical dependency evaluation and follow any "recommendations thereof," and complete parenting classes.

¶4 In November 1996, A.W-M. was again placed in foster care because M.M. "had not followed through at all with the treatment plan and the hospital was concerned about her chemical dependency issues." M.M. failed to attend a December 19, 1996, review hearing, and the District Court ordered that the Department have temporary investigative authority for an additional ninety-day period, and ordered that M.M. "continue working on her treatment plan."

¶5 On February 25, 1997, roughly one month after M.M. appeared at a second status hearing, the Department filed a petition for temporary legal custody. Among the allegations set forth in the Department's supporting affidavit were that M.M. had failed to meet even a single objective of her September 1996 treatment plan. More specifically, the Department asserted that, although M.M. had "completed a chemical dependency evaluation" and had begun the recommended intensive outpatient treatment, she received "a disciplinary discharge because she did not show up for two appointments" and because she had "a urinalysis that was positive for marijuana." The Department also alleged that M.M. had failed to secure stable or permanent living arrangements, failed to attend counseling, and had not undergone a psychological evaluation as ordered.

¶6 On March 6, 1997, the court issued an order granting the Department temporary legal custody over A.W-M. The court held an adjudicatory hearing on June 5, 1997, at which M.M. failed to appear, and granted the Department legal custody for a six-month period. The court additionally ordered that M.M. "must make every effort to successfully complete" her treatment plan.

¶7 On July 15, 1997, the Department filed its petition for permanent legal custody and termination of parental rights. Citing § 41-3-609(1), MCA, the Department sought to terminate M.M.'s parental rights for failure to comply with or successfully complete her treatment plan, and on the grounds that the conduct or condition rendering her unfit was unlikely to change within a reasonable time. The court held a

hearing on September 16, 1997, and on October 23, 1997, entered an order terminating M.M.'s parental rights. It is from the District Court's order terminating her parental rights that M.M. presently appeals.

## STANDARD OF REVIEW

¶8 We review a district court's decision to terminate parental rights to determine whether the court interpreted the law correctly and whether its findings of fact are clearly erroneous. *In re K.F.L. and N.L.* (1996), 275 Mont. 102, 104, 910 P.2d 241, 243.

¶9 In *In re D.H. and F.H.* (1994), 264 Mont. 521, 524, 872 P.2d 803, 805, we clarified the standard of review for cases involving a youth in need of care and termination of parental rights. The appropriate standard of review to be applied to purely factual findings in a termination of parental rights proceeding is the clearly erroneous standard as set forth in *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review conclusions of law in a termination proceeding to determine if those conclusions are correct. *In re D.H. and F.H.*, 264 Mont. at 525, 872 P.2d at 805.

¶10 This Court has recognized that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re R.B., Jr.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848. Accordingly, prior to terminating an individual's parental rights, the district court must adequately address each applicable statutory requirement. *In re R.B., Jr.*, 217 Mont. at 103, 703 P.2d at 848.

## DISCUSSION

¶11 Did the District Court err in terminating M.M.'s parental rights?

¶12 M.M. advances two arguments on appeal, the first of which is that the District Court erred in finding A.W-M. was a youth in need of care. M.M. asserts there was no evidence indicating A.W-M. was abused or neglected at the time of her removal from M.M.'s care in November 1996. At the hearing on the Department's petition to terminate M.M.'s parental rights, social worker Brennan Swanberg explained that the Department had placed A.W-M. in foster-care on November 6, 1996, because the child had bronchitis and because she had been left with an inappropriate caregiver.

On appeal, M.M. argues the Department presented no evidence to suggest that A.W-M.'s bronchitis was due to abuse or neglect, and similarly asserts the Department failed to present any evidence to suggest that the caregiver with whom M.M. left her daughter was inappropriate. Moreover, M.M. disputes the Department's assertion that she failed to return for her child when expected by the caregiver. In light of the foregoing, M.M. argues the Department failed to present clear and convincing evidence that A.W-M. was in danger of being neglected or abused while in her care. Because the Department failed to demonstrate that A.W-M. was a youth in need of care, M.M. argues, "the child should not have been removed and the action should have been terminated."

¶13 In its order terminating M.M.'s parental rights, the District Court found that A.W-M. "is a youth in need of care within the meaning [of] § 41-3-201, MCA (1995), and her best interests will be served by declaring her a youth in need of care under the laws of the State of Montana." The court additionally concluded that A.W-M. had previously been "adjudicated a youth in need of care and remains as such." We will not disturb a decision by the district court terminating parental rights "unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion. *In re S.P.* (1990), 241 Mont. 190, 194, 786 P.2d 642, 644 (quoting *In re R.A.D.* (1988), 231 Mont. 143, 148, 753 P.2d 862, 865).

¶14 The record in the present case contains substantial credible evidence to support the District Court's determination that A.W-M. was a youth in need of care. For example, the record indicates that when A.W-M. was only three months old, M.M. left her in the care of a known sex offender. Department social worker Brennan Swanberg testified that, when A.W-M. was seven months old and sick with bronchitis, M.M. left her with a babysitter. Swanberg explained that when M.M. failed to return for her daughter at the predetermined time, the babysitter took A.W-M. to the emergency room for treatment. Swanberg stated that, although M.M. eventually arrived at the hospital, doctors would not release A.W-M. into her care because she "appeared to be high." The record additionally indicates that M.M. made few efforts to complete the requirements of her treatment plan, tested positive for the use of marijuana, and left A.W-M. with caregivers for indefinite periods of time on more than one occasion. Under these circumstances, we hold the District Court did not err in finding that A.W-M. was a youth in need of care. Moreover, although M.M. argues on appeal that "the child should not have been removed"

from her care and placed in a foster home in November 1996, we note that M.M. did not object to her removal at that time and did not object to the court's order granting the Department investigative authority and protective services.

¶15 Having held that the District Court did not err in finding that A.W-M. was a youth in need of care, we turn next to M.M.'s argument that the court erred in concluding she could not be expected to complete her treatment objectives in the foreseeable future, and thus erred in terminating her parental rights. In its order terminating M.M.'s parental rights, the District Court indeed concluded that M.M. "did not comply with" her treatment plan, and determined that those "portions of the treatment plan that were attempted were not successful." The court additionally concluded that the conduct or condition rendering M.M. unfit to parent her child "is unlikely to change within a reasonable time."

¶16 On appeal, M.M. concedes "it is clear that [she] did not complete her treatment plan," but asserts the Department failed to demonstrate that a treatment plan was actually necessary. Moreover, M.M. argues the Department presented no evidence to contradict her assertion that she was not chemically dependent, and similarly presented no evidence that she was an unfit parent. M.M. accordingly argues the court erred in concluding that the conduct or condition rendering her unfit to parent A.W-M. "is unlikely to change within a reasonable time," and thereby erred in terminating her parental rights.

¶17 Having reviewed the record, we conclude there is ample evidence which supports the court's determination that the conduct or condition rendering M.M. unfit was "unlikely to change within a reasonable time." Despite M.M.'s assertions to the contrary, the record contains substantial evidence indicating she was chemically dependent. For example, Gateway Recovery conducted a chemical dependency evaluation and recommended that M.M. undergo intensive outpatient chemical dependency treatment. Moreover, M.M. was subsequently discharged from treatment due in part to the fact that her urine tested positive on one occasion for the presence of marijuana. Also indicative of M.M.'s inability to effectively parent her child is evidence that she had been unable to secure stable housing or employment, had failed to attend court-ordered counseling, and had visited only sporadically with her daughter.

¶18 When asked at the termination hearing why she had not completed court-

ordered intensive outpatient chemical dependency treatment, M.M. replied that she "[j]ust didn't care at the time." M.M. stated that she did not complete the counseling requirement contained in her treatment plan because she believed such counseling had nothing to with her daughter. When asked why the court should give her more time to complete her treatment plan, M.M. explained, "I don't think they should. I messed up, and I know I did, and I don't think they should." Although M.M. testified that she would not relinquish her parental rights to A.W-M., she simultaneously agreed that she was unwilling to do what the court ordered her to do in order to get her daughter back.

¶19 In light of the foregoing, we conclude the record contains substantial evidence supporting the court's determination that M.M. was "unfit, unwilling, or unable to provide adequate parental care," and that "[t]he conduct or condition of [M.M] rendering [her] unfit is unlikely to change within a reasonable time." We thus hold the court did not err in concluding M.M. could not be expected to complete an appropriate treatment plan in the foreseeable future, and in thereby terminating M.M.'s parental rights.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER