No. 98-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 71

294 Mont. 29

977 P.2d 997

IN THE MATTER OF K.A.B.,

Youth in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Kevin Gillen, Gillen Law Office, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Mark W. Mattioli, Assistant Attorney General; Dennis Paxinos, Yellowstone County Attorney, Melanie Logan, Deputy County Attorney, Billings, Montana

Submitted on Briefs: October 22, 1998

Decided: April 6, 1999

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

¶1. Roger A. (Roger) appeals from the decision of the District Court for the Thirteenth Judicial District, Yellowstone County, terminating his parental rights to K.A.B. We affirm.

¶2. Roger raises two issues on appeal, which we restate as follows:

¶3. 1. Did the District Court err in finding that Roger did not comply with the provisions of his treatment plan?

¶4. 2. Did the District Court err in finding that Roger abandoned K.A.B.?

¶5. Because our decision as to Issue 1 is dispositive, we decline to address Issue 2.

## Factual and Procedural Background

¶6. The Department of Public Health and Human Services (DPHHS) has been involved with Roger and Kim B. (Kim), the natural parents of K.A.B., since April 1990. At that time, Kim's other daughters, S.B. and A.B., alleged that Roger, who was Kim's live-in boyfriend, sexually abused them. Roger denied S.B.'s and A.B.'s allegations and Kim did not believe her daughters' allegations. In May 1992, however, Roger admitted that he sexually abused S.B., A.B., and Kim's cousin's daughter.

¶7. Roger was subsequently charged with three counts of sexual intercourse without consent. He pleaded guilty in December 1992. The court sentenced Roger to time in

the Montana State Prison, suspended all jail time, and placed him on probation until 2002.

¶8. On January 10, 1996, the DPHHS became involved with Roger and Kim when it learned that they had resumed their relationship in late 1995. Although their renewed relationship lasted for only two months, Kim became pregnant with K.A.B. Kim gave birth to K.A.B. on September 13, 1996. Upon admission to the hospital, Kim denied knowledge of her pregnancy and indicated that she had not received pre-natal care. Roger testified at the hearing on this matter that he did not know that Kim was pregnant until Toni Napier (Napier), a DPHHS social worker, called him approximately one week after K.A.B.'s birth and told him that Kim gave birth and named him as the father.

¶9. Six days after K.A.B.'s birth, on September 19, 1996, the DPHHS filed a Petition for Temporary Investigative Authority and Protective Services of K.A.B. Later that day, the District Court issued an order which granted the DPHHS temporary investigative authority.

¶10. On January 2, 1997, the District Court approved a treatment plan which Roger signed on December 23, 1996. The treatment plan required Roger to: (1) continue working with a counseling center to address his sexual offending behaviors; (2) not have any contact with K.A.B., S.B. and A.B. unless approved by the DPHHS; (3) keep his home free of alcohol and drugs; (4) not be involved in criminal activity; (5) attend parenting classes; (6) maintain an income; and (7) comply with his probation officer's requirements.

¶11. On December 18, 1996, the DPHHS apparently filed a petition to terminate Roger's and Kim's parental rights to K.A.B. The DPHHS's petition, which is not part of the record but was included in the appendix to Roger's brief, alleged that neither Roger nor Kim had complied with their treatment plans and that the conduct and conditions that render them unfit as parents were unlikely to change within a reasonable time. The petition also alleged that Roger abandoned K.A.B.

¶12. The District Court held a hearing on the DPHHS's petition on April 4, 1997. Gayle Walsh (Walsh), Roger's therapist in a sex offender treatment program, testified that Roger's progress has been slow but steady. Even so, Walsh stated that Roger would never be able to be the sole parent of K.A.B. Walsh, however, did not

state whether she thought that Roger's parental rights should be terminated even after Roger's attorney asked her for her opinion. Nevertheless, Walsh stated that she saw "no problem with Roger being a part of [K.A.B.'s] life." Napier testified that Roger had not attended any parenting classes even though his treatment plan required that he do so. Napier opined that terminating Roger's parental rights would be in K.A.B.'s best interests. Roger testified on his own behalf at the hearing and admitted that he could not be an adequate parent to K.A.B. However, Roger stated that he would like to be a part of K.A.B.'s life by taking part in supervised visits with her. Roger also admitted that he had not attended the parenting classes that his treatment plan required.

¶13. On April 21, 1997, the District Court issued its Findings of Fact, Conclusions of Law and Order which terminated Roger's and Kim's parental rights to K.A.B. and awarded the DPHHS permanent custody of K.A.B. with authority to assent to adoption. Roger appeals from the court's Findings of Fact, Conclusions of Law and Order.

## Standard of Review

¶14. This Court reviews a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re A. W-M.*, 1998 MT 157, ¶ 8-9, 960 P.2d 779, ¶ 8-9, 55 St.Rep. 628, ¶ 8-9. We review the court's findings of fact to determine whether the court's findings are clearly erroneous. *A. W-M.*, ¶ 8-9 (citing *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re E.W.*, 1998 MT 135, ¶ 10, 959 P.2d 951, ¶ 10, 55 St.Rep. 536, ¶ 10 (citing *DeSaye*, 250 Mont at 323, 820 P.2d at 1287).

¶15. This Court has stated that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re E.W.*, ¶ 12 (quoting *In re R.B., Jr.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848). Thus, a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights. *In re E.W.*, ¶ 12 (citing *In re R.B., Jr.*, 217 Mont. at 103, 703 P.2d at 848). The party seeking to terminate an individual's parental rights has the burden of proving by clear and

**convincing evidence that the statutory criteria for termination has been met.** *In re E. W.,* **¶ 12 (citing** *In re J.L., D.L., and A.G.* **(1996), 277 Mont. 284, 288, 922 P.2d 459, 461). In cases involving the termination of parental rights, this Court has stated that**

clear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In re J.L., D.L., and A.G.,* *277 Mont. at 289, 922 P.2d at 462 (quoting In re Interest of S.M.Q. (1990), 247 Kan. 231, 796 P.2d 543, 545).*

**¶16. When considering the criteria for termination, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA. See also** *Matter of B.C.* **(1997), 283 Mont. 423, 430, 942 P.2d 106, 110 (citation omitted).**

**Discussion**

**¶17.** *Did the District Court err in finding that Roger did not comply with the provisions of his treatment plan?*

**¶18. The District Court adjudicated K.A.B. a youth in need of care pursuant to § 41-3-102, MCA, and terminated Roger's parental rights pursuant to § 41-3-609, MCA. That section provides in pertinent part:**

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: . . .

(e) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been

complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; . . . .

**¶19. Roger first claims that he substantially complied with his treatment plan. Therefore, he asserts that the District Court's finding that he did not comply with his treatment plan is clearly erroneous. Partial compliance with a treatment plan, however, is insufficient to preclude termination of parental rights. *Matter of B.C.*, 283 Mont. at 430, 942 P.2d at 111 (citing *Matter of J.J.C.H.* (1992), 252 Mont. 158, 164, 827 P.2d 812, 816). In the instant case, Roger admitted that he did not attend the parenting classes which his treatment plan required. Napier also testified that Roger failed to attend parenting classes. Thus, there is substantial evidence to support the District Court's finding that Roger did not comply with his treatment plan. Therefore, this finding is not clearly erroneous. Thus, we conclude that the District Court did not err in finding that Roger failed to comply with his treatment plan.**

**¶20. Roger next argues that the parenting component of his treatment plan was a "moot point" because he did not plan to parent K.A.B. and only wanted supervised visits with her. Notwithstanding, Roger voluntarily entered into the treatment plan which required him to attend parenting classes. Moreover, the issue facing the District Court was whether Roger's and Kim's parental rights to K.A.B. should be terminated. Thus, it cannot be said that the parenting component of Roger's treatment plan was a "moot point" even though Roger did not plan to parent K.A.B.**

**¶21. Finally, Roger cites § 41-3-609(1)(f), MCA, and argues that the court erred in terminating his parental rights because K.A.B. was not in an out-of-home placement for a cumulative total period of one year or longer. Section 41-3-609(1)(f), MCA, however, is an alternative basis for terminating parental rights and is inapplicable in the instant case because Roger's parental rights were terminated pursuant to § 41-3-609(1)(e), MCA.**

**¶22. Accordingly, we conclude that the District Court's finding that Roger failed to comply with the terms of his treatment plan is not clearly erroneous and that the court did not err in terminating Roger's parental rights to K.A.B.**

**¶23. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.