No. 00-659

IN THE SUPREME COURT OF THE STATE OF MONTANA
2001 MT 104N

---

IN THE MATTER OF THE CUSTODY AND

PARENTAL RIGHTS OF R.S.P. and N.J.S.P.

---

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeremy Gersovitz, Assistant Public Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Mike McGrath, Lewis and Clark County Attorney, Carolyn A. Clemens,

Deputy County Attorney, Helena, Montana

For Youth:

Randi M. Hood, Chief Public Defender, Helena, Montana

---

Submitted on Briefs: February 1, 2001

Decided: June 19, 2001

Filed:

---

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1  Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be

reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2  The Montana Department of Health and Human Services (DPHHS) filed a petition for temporary investigative authority, protective services, and temporary custody of R.S.P. and N.J.S.P. in the District Court for the First Judicial District in Lewis and Clark County. The District Court found that R.S.P. and N.J.S.P. were youths in need of care and granted temporary investigative authority and temporary custody to DPHHS. DPHHS subsequently filed a petition for a permanent plan hearing and termination of parental rights. Following a hearing, the District Court terminated parental rights to R.S.P. and N.J.S.P. The natural mother, Amy, appeals from the order of the District Court. We affirm in part and remand for further findings.

¶3  There are two issues on appeal:

¶4  Did the District Court err when it found that Amy did not comply with her treatment plan and that the conduct that rendered her an unfit parent was unlikely to change within a reasonable time?

¶5  Did the District Court make the findings required by § 41-3-609(2), MCA?

## FACTUAL BACKGROUND

¶6  Amy and Richard are the natural parents of two boys, R.S.P., born December 23, 1993, and N.J.S.P., born March 2, 1995. Amy was fourteen years old when she gave birth to R.S.P. At the time of the termination hearing, Amy was twenty years old and incarcerated at the Lewis and Clark County Detention Facility, serving sentences of six months and ninety-seven days. Richard has relinquished his parental rights to DPHHS and consented to the placement of the boys for adoption.

¶7  R.S.P. and N.J.S.P. are emotionally disturbed children with a history of setting fires, destroying property, and inappropriate sexual behavior. Their behavior

brought the boys to the attention of child welfare workers, first in Kalispell and later in Helena. On September 17, 1998, DPHHS, through the Lewis and Clark County Attorney's Office, filed a petition for temporary investigative authority, protective services, and temporary custody. Amy and Richard stipulated, and the District Court declared, that R.S.P. and N.J.S.P. were youths in need of care and granted temporary investigative authority and temporary custody to DPHHS. A series of treatment plans were prepared for Amy and filed with the District Court. Amy's fifth and final treatment plan, filed with the District Court on January 31, 2000, established eleven general goals and twenty-two specific tasks.

¶8  On March 22, 2000, DPHHS filed a petition for a permanent plan hearing and termination of parental rights. The District Court held a hearing to consider the petition on April 12 and 13, 2000. The District Court focused on Amy's efforts to comply with her treatment plan. On June 5, 2000, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The District Court found that Amy had failed to successfully complete her treatment program, that no other services were available to assist her in attaining the level of parenting skills she needed, and that it was not reasonably foreseeable that Amy would be able to successfully complete the treatment plan in the future. As a result, the District Court ordered the termination of Amy's parental rights to R.S.P. and N.J.S.P. Amy now appeals from the District Court's termination order.

## STANDARD OF REVIEW

¶9  We review cases involving the termination of parental rights to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Matter of K.F.L.* (1996), 275 Mont. 102, 104, 910 P.2d 241, 243. We presume that the district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *Matter of E.W.*, 1998 MT 135, ¶ 14, 289 Mont. 190, ¶ 14, 959 P.2d 951, ¶ 14.

# DISCUSSION

# ISSUE 1

¶10  Did the District Court err when it found that Amy did not comply with her treatment plan and that the conduct that rendered her an unfit parent was unlikely to change within a reasonable time?

¶11  A district court may order the termination of the parent-child relationship if the child is adjudicated a youth in need of care, the parent has failed to comply with an appropriate court-approved treatment plan, and the conduct or condition of the parent rendering that parent unfit is unlikely to change within a reasonable time. *See* § 41-3-609(1), MCA. Amy acknowledges that she failed to comply with several requirements of her treatment plan. However, Amy contends that she substantially complied with the treatment plan and that her substantial compliance should preclude termination of her parental rights.

¶12  Amy's final treatment plan required that she continue therapy; that she meet with the boys' therapists as requested; that she have bi-weekly contact with her social worker; that she consult with a representative from the Health Department; that she arrange speech therapy for N.J.S.P.; that the children receive psychological evaluations; that she maintain full time employment; that she arrange for day care for the children; that she finalize her divorce; that she not permit her mother and stepfather to have contact with the children; that she not associate with child abusers or drug and alcohol abusers; that she advise her social worker of address or employment changes; that she agree to drop-in visits by her social worker; that she submit to drug and alcohol testing; that she cooperate with the AWARE case manager; that the boys utilize AWARE services; that she cooperate with the therapeutic program at R.S.P.'s school; that she enroll R.S.P. in the Intermountain Children's Home residential program; that she work with N.J.S.P.'s educational program advisers; that she develop and follow a budget; that she provide medical care for the boys; and that she check the children for matches and lighters.

¶13   There is substantial credible evidence in the record that Amy did not comply with her treatment program. She missed many scheduled appointments with social workers. Her own efforts at therapy were sporadic and she failed to take the boys to therapy regularly. The social workers testified that the last omission was very harmful to the boys.

¶14   Amy often lost interest in her children and DPHHS's services, keeping appointments only when it became clear that she might lose her children. N.J.S.P. did not receive adequate speech therapy. Amy neglected to attend training classes at the Career Training Institute, which resulted in the termination of her welfare benefits. During her treatment plan, Amy had six or seven different jobs and was fired from at least one of them for stealing from the employer. She often failed to pay her rent and left bills and court fines unpaid. Amy admitted that the boys had contact with her mother. The social worker testified that Amy had entered into a sexual relationship with a known felon, who lived with Amy and the boys for several months. The social worker lost contact with Amy when she moved. A case worker from DPHHS testified that Amy's case had been closed for lack of cooperation and progress. Finally, Amy was unable to maintain her budget and was evicted from rentals so often that she had been permanently terminated from Section 8 public housing.

¶15   Amy's claim that partial compliance is sufficient to avoid the termination of her parental rights "ignores the long-standing principle that partial compliance with a treatment plan is insufficient." *Matter of A.N. and C.N.*, 2000 MT 35, ¶ 45, 298 Mont. 237, ¶ 45, 995 P.2d 427, ¶ 45. The district court must give primary consideration to the best interests of the children in determining whether to terminate parental rights. *Matter of K.A.B.*, 1999 MT 71, ¶ 16, 294 Mont. 29, ¶ 16, 977 P.2d 997, ¶ 16. We conclude that the District Court did not err when it found and concluded that Amy had not substantially complied with her treatment plan.

ISSUE 2

¶16  Did the District Court make the findings required by § 41-3-609(2), MCA?

¶17  Section 41-3-609(2), MCA provides as follows:

In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care....

¶18  Here, the District Court found that Amy had failed to complete her treatment plan and was unlikely to do so in the near future. However, it made no finding that continuation of the parent-child legal relationship would result in continued abuse or neglect or that the conduct or condition at issue rendered Amy unfit, unable, or unwilling to give her children adequate parental care. Therefore, we remand this matter to the District Court for determination of whether the finding required by § 41-3-609(2), MCA can be made and, if so, for amendment of the findings to so state.

¶19  The judgment of the District Court is affirmed in part and remanded for further findings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

No

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER