No. 98-230

293 Mont. 524

977 P. 2d 317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 64

IN THE MATTER OF J.N. and A.N.,

Youths in Need of Care.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Lawrence LaFountain, Great Falls, Montana

For Children:

Carl B. Jensen, Jr., Cascade County Public Defender's Office, Great Falls, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Mark W. Mattioli, Assistant Attorney General, Helena, Montana; Brant Light, Cascade County Attorney, Samuel Harris, Deputy Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: March 11, 1999

Decided: April 1, 1999

Filed:

No

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Kathy N. (Kathy), the natural mother of J.N. and A.N., appeals from the decision of the District Court for the Eighth Judicial District, Cascade County, terminating her parental rights to J.N. and A.N. We affirm.**

**¶2. Kathy raises one issue on appeal, which we restate as follows:**

**¶3. Did the District Court err in ruling that Kathy's treatment plan was appropriate?**

## Factual and Procedural Background

**¶4. Kathy and Steve N. (Steve) are the natural parents of A.N. and J.N. Kathy gave birth to A.N. on October 17, 1991 and to J.N. on May 29, 1995. On November 26, 1996, the Montana Department of Public Health and Human Services (DPHHS) filed a Petition for Temporary Investigative Authority and Protective Services of J.N. and A.N. The affidavit filed in support of the DPHHS's petition stated that J.N. and A.N. had been left at home alone, were not being properly fed, and that the home was unsanitary. On December 23, 1996, the District Court issued an order wherein it granted the DPHHS the authority to place J.N. and A.N. in a foster home and appointed a guardian ad litem for J.N. and A.N.**

**¶5. The District Court held a hearing on the DPHHS's petition for temporary investigative authority on February 18, 1997. At this hearing, the District Court heard evidence that the home was unsanitary, that there was hardly any food in the**

house, and that A.N. was sexually abused. On February 21, 1997, the court issued an order which granted the DPHHS's petition.

¶6. On April 9, 1997, the DPHHS filed a Petition for Temporary Legal Custody of J. N. and A.N. On May 27, 1997, the District Court held a hearing on this petition. Nikki Smith (Smith), a community social worker for the state of Montana, testified that she was preparing a treatment plan for Kathy. Kathy testified by telephone because she was in prison in Idaho at that time for sexual battery of a minor. Kathy testified that she had 88 days left until she was eligible for release. She stated that she was willing to work on a treatment plan while she was in prison and that she knew that it was "time to grow up and do what's right." At the end of the hearing, the District Court warned Kathy that the case was one step away from termination of her parental rights to J.N. and A.N. That said, the court then told Kathy that it was "absolutely critical" that she comply with the treatment plan which was being developed for her. On June 9, 1997, the District Court granted temporary legal custody of J.N. and A.N. to the DPHHS for six months.

¶7. On December 1, 1997, the DPHHS filed a Petition for Permanent Legal Custody and Termination of Parental Rights. The District Court held a hearing on the DPHHS's petition on January 7, 1998. Kathy was still in prison in Idaho at the time of the hearing on the DPHHS's petition because she was not released due to disciplinary infractions. She did not attend the hearing either personally or by telephone. She was, however, represented by counsel.

¶8. Smith testified at the hearing that she had talked with Kathy by telephone regarding what programs were available to Kathy in prison. Smith testified that she then sent Kathy a treatment plan. Smith stated that she went over each point and goal of Kathy's treatment plan with Kathy over the telephone. Smith said that she "was willing to look at what [Kathy] got done in prison and apply that to the treatment plan; and then if she got out in August [1997], we would have taken a look at what she had done, what she needed to do, and get her going in those things." Smith testified that she recognized that Kathy was limited in what she could accomplish in prison but that she told Kathy that the prison programs would fulfill some of the treatment plan's requirements. Smith also stated that she took into account that Kathy was in prison and knew that Kathy would be unable to complete the treatment plan until she was released from prison.

¶9. Despite Smith's efforts, Kathy's counselor at the correctional facility in Idaho told Smith that Kathy had done "nothing towards working on the treatment plan" and that Kathy had done "nothing in the prison that she was supposed to be doing." Smith also recounted that Kathy's counselor told her that Kathy missed classes at the prison because of Kathy's poor behavior. Moreover, Smith explained that Kathy was not paroled in August 1997, because of poor behavior and was not eligible for parole until the year 2000.

¶10. On January 26, 1998, the District Court issued its Findings of Fact, Conclusions of Law and Order which terminated Kathy's and Steve's parental rights to J.N. and A.N. and awarded the DPHHS legal custody of J.N. and A.N. Kathy appeals from the court's Findings of Fact, Conclusions of Law and Order.

## Standard of Review

¶11. This Court reviews a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re A. W-M.*, 1998 MT 157, ¶ 8-9, 960 P.2d 779, ¶ 8-9, 55 St.Rep. 628, ¶ 8-9. We review the court's findings of fact to determine whether the court's findings are clearly erroneous. *A. W-M.*, ¶ 8-9 (citing *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re E.W.*, 1998 MT 135, ¶ 10, 959 P.2d 951, ¶ 10, 55 St.Rep. 536, ¶ 10 (citing *DeSaye*, 250 Mont at 323, 820 P.2d at 1287).

¶12. This Court has stated that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re E.W.*, ¶ 12 (quoting *In re R.B., Jr.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848). Thus, a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights. *In re E.W.*, ¶ 12 (citing *In re R.B., Jr.*, 217 Mont. at 103, 703 P.2d at 848). The party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re E. W.*, ¶ 12 (citing *In re J.L., D.L., and A.G.* (1996), 277 Mont. 284, 288, 922 P.2d 459, 461). In cases involving the termination of parental rights, this Court has stated that

clear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In re J.L., D.L., and A.G.*, 277 Mont. at 289, 922 P.2d at 462 *(quoting In re Interest of S.M.Q. (1990), 247 Kan. 231, 796 P.2d 543, 545).*

**¶13. When considering the criteria for termination, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA. See also *Matter of B.C.* (1997), 283 Mont. 423, 430, 942 P.2d 106, 110 (citation omitted).**

## Discussion

**¶14.** *Did the District Court err in ruling that Kathy's treatment plan was appropriate?*

**¶15. The District Court adjudicated J.N. and A.N. youths in need of care pursuant to § 41-3-102, MCA, and terminated Kathy's parental rights to them pursuant to § 41-3-609, MCA, which provides in pertinent part:**

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: . . .

(e) the child is an adjudicated youth in need of care and both of the following exist:

(i) an *appropriate treatment plan* that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; . . . .

(Emphasis added.) Kathy argues that her treatment plan was not appropriate because it was designed for a person who was not incarcerated. Therefore, she concludes that the District Court erred in terminating her parental rights to J.N. and A.N. pursuant to § 41-3-609, MCA.

**¶16. This Court has not defined what constitutes an appropriate treatment plan under § 41-3-609(1)(e)(i), MCA, and has recognized that no "bright line definition is possible given the unique circumstances existing in each case."** *Matter of Custody and Parental Rights of M.M.* **(1995), 271 Mont. 52, 56, 894 P.2d 298, 301. Nevertheless, we have recognized factors applicable to determining whether a treatment plan is appropriate. Although not determinative by itself, one factor is whether the parent was represented by counsel and agreed to the treatment plan.** *M.M.***, 271 Mont. at 57, 894 P.2d at 301 (citing** *Matter of R.H.* **(1991), 250 Mont. 164, 169, 819 P.2d 152, 155). Another factor is whether the treatment plan was directed at problems facing the parent and the child.** *M.M.***, 271 Mont. at 57, 894 P.2d at 301 (citing** *Matter of S.C.* **(1994), 264 Mont. 24, 29, 869 P.2d 266, 269 and** *Matter of J.R.* **(1992), 253 Mont. 434, 833 P.2d 1063, 1065-66).**

**¶17. Kathy cites** *Matter of W.Z.* **(1997), 285 Mont. 16, 946 P.2d 125, in support of her argument that her treatment plan was not appropriate. In** *Matter of W.Z.***, the district court granted the State's petition to terminate the father's parental rights on the grounds that the father abandoned W.Z. and found that a treatment plan was impractical because of the father's incarceration. We noted that § 41-3-609(4)(b), MCA, provides an exception to the requirement that a court approve an appropriate treatment plan prior to terminating parental rights if the "parent is incarcerated for more than one year and a treatment plan is not practical considering the incarceration . . . ." However, we also pointed out that "this Court will not permit the termination of parental rights without first establishing a treatment plan unless a showing of facts clearly proves the impossibility of any workable plan."** *Matter of W. Z.***, 285 Mont. at 29, 946 P.2d at 133 (quoting** *In re Matter of R.B., Jr.* **(1985), 217 Mont. 99, 105, 703 P.2d 846, 849). It was undisputed in** *Matter of W.Z.* **that the father had been incarcerated for longer than one year. Even so, the record showed that neither the Department of Family Services nor the social worker involved in the case presented the father with a treatment plan or even spoke with him about implementing a treatment plan. The social worker, however, conceded at the termination hearing that certain prison programs might have become part of a potential treatment plan.** *Matter of W.Z.***, 285 Mont. at 29, 946 P.2d at 133. Thus, we**

concluded that the record did not support the district court's finding that a treatment plan was impractical under the facts of the case. Accordingly, we reversed the court's decision to terminate the father's parental rights. *Matter of W.Z.*, 285 Mont. at 29-30, 946 P.2d at 134.

¶18. In *Matter of W. Z.*, therefore, we reversed the district court's decision to terminate the father's parental rights because the State failed to implement a treatment plan even though such a plan was not impractical given the circumstances in the case. We were not faced with, and thus did not address, the issue of whether a treatment plan was appropriate pursuant to § 41-3-609(1)(e)(i), MCA. Consequently, Kathy's reliance on *Matter of W.Z.* is misplaced.

¶19. In the instant case, although we agree with Kathy that most of her treatment plan was designed for a person who was not incarcerated, the record shows that her treatment plan was drafted when she had a chance of being released from prison within four months and that she was told that some of the programs offered at the prison where she was incarcerated would satisfy the requirements of her treatment plan. Kathy was represented by counsel when she was presented with the treatment plan and there is nothing in the record that suggests that Kathy objected to her treatment plan after she went through it with Smith. *M.M.*, 271 Mont. at 57, 894 P.2d at 301 (citation omitted). Moreover, Kathy's treatment plan was directed at the problems facing Kathy and her children. *M.M.*, 271 Mont. at 57, 894 P.2d at 301 (citations omitted). Notwithstanding, the record shows that Kathy neglected to even attempt to comply with her treatment plan and that she was denied parole because of her poor behavior. Accordingly, we conclude that the District Court did not err in finding or ruling that Kathy's treatment plan was appropriate and that she failed to comply with it.

¶20. Affirmed.

/S/ JAMES C. NELSON

We Concur:

No

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART