No. 02-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 4

IN RE THE MATTER OF

M.O., M.O. and M.O.,

> Youths in Need of Care.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

> For Appellant:
>
> > Amy N. Guth, Attorney at Law, Libby, Montana
>
> For Respondent:
>
> > Hon. Mike McGrath, Attorney General; Tammy K. Plubell,
> > Assistant Attorney General, Helena, Montana
> >
> > Bernard G. Cassidy, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  October 24, 2002

Decided:  January 16, 2003

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1   L.K. appeals from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, on its findings of fact, conclusions of law and order terminating her parental rights to her three children.  We reverse.

¶2   The sole issue on appeal is whether the District Court abused its discretion in terminating L.K.'s parental rights pursuant to § 41-3-609(1)(f), MCA.

BACKGROUND

¶3   On July 20, 1999, the Montana Department of Public Health and Human Services (Department) filed a petition in the District Court seeking temporary investigative authority (TIA) over L.K.'s three children based on allegations that the children were--or were in danger of being--abused or neglected as defined in § 41-3-102, MCA.  The District Court appointed a guardian ad litem for the children and scheduled a show cause hearing on August 18, 1999, on the petition.  L.K. appeared at the show cause hearing, but was not represented by counsel.  On being questioned by the court, L.K. responded that she understood what the Department was requesting via the petition for TIA and initially stated that she did not oppose the Department's request.  Later during the hearing, however, and at the suggestion of the children's guardian ad litem, L.K. informed the District Court that she disagreed with some of the factual allegations in the petition and reserved her right to object to those allegations in the future.  In response, the court stated:

2

Exactly. This stuff is not proven as far as I'm concerned. So far it's just allegations. And if we get to the point where it has to be proven then I'll hear testimony from witnesses who are under oath. And I'll make sure I get the facts straight.

The parties also entered into a treatment plan agreement prior to the close of the hearing. The District Court subsequently entered a written order granting TIA to the Department for a 90-day period and scheduling a review hearing for November 22, 1999.

¶4 At the review hearing, the Department requested the District Court to extend the TIA for an additional 90-day period and L.K. objected. The court heard testimony regarding L.K.'s compliance with the treatment plan, following which it granted the Department's request to extend the TIA. A review hearing was scheduled for February 14, 2000.

¶5 On February 9, 2000, the Department filed a petition for temporary legal custody (TLC) and a show cause hearing on the petition was scheduled for February 28, 2000. At the February 14, 2000, review hearing on the TIA, the Department requested the District Court to extend the TIA for an additional two weeks pending the TLC show cause hearing. The children's guardian ad litem requested that, rather than extending the TIA, the court continue the TIA review hearing to February 28, 2000. The District Court orally continued the review hearing, stating that "in the meantime the status quo will be continued." The court's written order following the hearing extended the TIA for two weeks and scheduled a review hearing for February 28, 2000.

3

¶6 On February 28, 2000, the parties appeared for the joint TIA review and TLC show cause hearing. The guardian ad litem observed that Montana law required L.K. be served with the TLC petition and order to show cause at least five days prior to a show cause hearing, and she had been served only three days prior to the February 28, 2000, hearing. As a result, the District Court orally continued the hearing until March 27, 2000, and extended the TIA for an additional 30 days pending that hearing. The court's subsequent written order extended the TIA and scheduled a review hearing for March 27, 2000, but did not mention the TLC show cause hearing. The review hearing subsequently was rescheduled for April 3, 2000.

¶7 The District Court opened the April 3, 2000, hearing by stating that it was the time set for a review hearing. The court went on to state that the Department "is requesting an additional period of temporary custody of the children for six months . . . ." The court then asked L.K., who was not represented by counsel, whether she opposed a six-month extension of temporary legal custody and she responded she was not opposed. At this point, counsel for the Department stated

> [y]our Honor, also for the sake of clarity, we are here today on a review of a TIA. We haven't filed a Petition for a TLC. If [L.K.] has no objection to that, we could file the Petition and the Court could order the TLC without the need for another hearing.

After brief discussion, counsel for the Department clarified that a TLC petition had been filed and stated "what we would be asking for is the temporary legal custody to be awarded at this time . . . ."

4

The District Court observed that L.K. had indicated no opposition to an order granting TLC and stated it would enter such an order. The court did not hear any testimony or receive any evidence in support of the Department's petition for TLC. The court entered its written order granting TLC of the children to the Department on April 4, 2000.

¶8 The District Court extended the TLC twice; first for two weeks, then for six months. On April 23, 2001, the Department filed a petition to terminate L.K.'s parental rights to her three children. The TLC was extended a third time pending a hearing on the termination petition. The termination hearing was held on November 8, 2001. Following the hearing, the District Court entered its findings of fact, conclusions of law and order terminating L.K.'s parental rights to her three children and awarding permanent legal custody of the children to the Department. In its findings of fact, the court stated that

> [o]n April 3, 2000, the Court found that the Youths were abused, dependent or neglected, or in danger of being abused, neglected, and dependent and adjudicated the Youths in Need of Care. At that time, the Court granted Temporary Legal Custody to [the Department] for a period of six (6) months.

Similarly, in its conclusions of law, the court concluded that the children "were adjudicated as Youths in Need of Care . . . on April 3, 2000."

¶9 The District Court subsequently entered judgment on its findings of fact, conclusions of law and order. L.K. appeals.

STANDARD OF REVIEW

5

¶10  A decision on whether to terminate parental rights is within the sound discretion of the district court and will not be overturned absent an abuse of that discretion.  In re T.C., 2001 MT 264, ¶ 13, 307 Mont. 244, ¶ 13, 37 P.3d 70, ¶ 13 (citation omitted).  In reviewing whether the district court abused its discretion, however, we review the court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct.  In re T.C., ¶ 13 (citations omitted).

DISCUSSION

¶11  Did the District Court abuse its discretion in terminating L.K.'s parental rights pursuant to § 41-3-609(1)(f), MCA?

¶12  Section 41-3-609(1)(f), MCA, authorizes a court to terminate parental rights upon finding that a child has been adjudicated a youth in need of care, an appropriate court-approved treatment plan has not been complied with or has not been successful, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time.  The adjudication of a child as a youth in need of care is a threshold requirement without which a court may not terminate a person's parental rights under the statute.  In re T.C., ¶ 15; Matter of M.J.W., 1998 MT 142, ¶ 11, 289 Mont. 232, ¶ 11, 961 P.2d 105, ¶ 11.

¶13  Here, the District Court found that the three criteria set forth in § 41-3-609(1)(f), MCA, existed and concluded, on that basis, that L.K.'s parental rights should be terminated.  L.K. contends that the District Court failed to conduct an adjudicatory hearing and, consequently, its finding that her children had been

6

adjudicated youths in need of care on April 3, 2000, is clearly erroneous and its conclusion that her parental rights should be terminated is incorrect. In response, the Department argues that the court conducted an adjudicatory hearing on April 3, 2000, following which it appropriately adjudicated the children as youths in need of care in its order granting TLC.

¶14 At the time of the April 3, 2000, hearing, § 41-3-401(2), MCA (1999), provided that, upon receiving a petition for TLC, a district court "shall set a date for an adjudicatory hearing on the petition." In addition, § 41-3-404, MCA (1999), further provided that

> (1) In the adjudicatory hearing . . . the court shall determine by a preponderance of the evidence whether the youth is a youth in need of care and ascertain, as far as possible, the cause.
>
> (2) The court shall hear evidence regarding the residence of the youth, the whereabouts of the parents, guardian, or nearest adult relative, and any other matters the court considers relevant in determining the status of the youth.
>
> . . . .

A court may adjudicate a child a youth in need of care only after conducting an adjudicatory hearing. In re T.C., ¶ 18; Matter of M.J.W., ¶ 12.

¶15 As stated above, the District Court heard no testimony and received no evidence at the April 3, 2000, hearing. This absence of evidence clearly violated the § 41-3-404, MCA (1999), requirements that the court "shall hear evidence . . ." and base its youth in need of care determination on that evidence. Furthermore, the court neither made nor could have made--given the

7

absence of any evidence--a determination that a preponderance of the evidence established the children were youths in need of care as required by § 41-3-404(1), MCA (1999). We conclude that the April 3, 2000, hearing did not constitute an adjudicatory hearing as contemplated by § 41-3-404, MCA (1999).

¶16 The Department argues that the District Court had evidence before it on which it could base a youth in need of care determination. It asserts that the report to the court prepared by Jeff Wedel (Wedel), a Department social worker, and filed in conjunction with--and in support of--the TLC petition, as well as Wedel's supplemental report to the court filed prior to the hearing, provided sufficient evidence to support the court's determination. However, the Department cites no authority for its assertion that reports filed prior to the adjudicatory hearing fulfill the requirement that the court "shall hear evidence . . ." at the hearing. In the absence of such authority, required by Rule 23(a)(4), M.R.App.P., we decline to address the Department's argument in this regard. In any event, both of Wedel's reports focus primarily on L.K.'s compliance with her treatment plan. Neither report contains evidence supporting the Department's allegation--or on which the District Court could determine by a preponderance of the evidence--that the children were youths in need of care.

¶17 The Department also argues that it was not necessary for the District Court to hear evidence at the April 3, 2000, hearing because L.K. did not object to the TLC petition. We disagree.

8

¶18  With regard to L.K.'s purported failure to object to the TLC petition at the April 3, 2000, hearing, it is important to note that the District Court opened the hearing by correctly stating that it was a review hearing.  As set forth above, the order scheduling the hearing included only the TIA review.  The court then misinformed L.K. that the Department was requesting an extension of a previously granted TLC and asked whether she objected to such an extension.  L.K., unrepresented by counsel who presumably would have caught--and corrected--the court's shift from a TIA extension to an extension of TLC which had not previously been granted, stated she did not.

¶19  Once the parties clarified that no TLC had been granted yet, L.K. was not asked whether she objected to the Department receiving TLC.  Nor was L.K., who earlier had reserved her right to contest factual allegations in the Department's initial petition for TIA, asked whether she agreed the children were youths in need of care.  Furthermore, a district court's adoption of a stipulation between the parties that TLC should be granted--even assuming such a stipulation had existed in this case--does not equate to an adjudication by the court that the children were youths in need of care.  See In re T.C., ¶ 18.  As stated above, such an adjudication may only be made after the court conducts an adjudicatory hearing.  In re T.C., ¶ 18; Matter of M.J.W., ¶ 12.  We conclude an adjudicatory hearing was never held in this case and, consequently, L.K.'s children were never adjudicated youths in need of care.

9

¶20 Absent an adjudicatory hearing and adjudication, the District Court's later findings of fact that it adjudicated the children youths in need of care on April 3, 2000, and that the three criteria for termination of parental rights set forth in § 41-3-609(1)(f), MCA, existed are clearly erroneous and the requisite statutory basis for termination of parental rights is lacking. We hold, therefore, that the District Court abused its discretion in terminating L.K.'s parental rights pursuant to § 41-3-609(1)(f), MCA.

¶21 Reversed.

/S/ KARLA M. GRAY

We concur

/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE