No. 05-328

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 59

_____

IN THE MATTER OF THE

ADOPTION OF A.L.O.,

    A Minor Child.

_____

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County Missoula, Cause No. DA 2004-40,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Darcy M. Crum, Rebeck & Crum, Great Falls, Montana

    For Respondent:

        Linda Osorio St. Peter, St. Peter & Warren, Missoula, Montana

_____

Submitted on Briefs:  February 14, 2006

Decided:  March 21, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Shortly after the birth of their daughter, A.L.O., T.F. (Mother) and R.O. (Father) relinquished their parental rights, allowing Jennifer and Branch Martin to adopt her. More than thirty days after the Fourth Judicial District Court, Missoula County, terminated Mother's parental rights, Mother filed a motion to set aside the adoption because contrary to requirements of § 42-2-405(2), MCA, she was a minor without legal representation at the time she signed the relinquishment papers. The District Court declared the adoption decree null and void and ordered the return of A.L.O. to Mother. The Martins appeal the District Court's order. Because we hold in favor of Mother, we decline to address her cross-appeal.

¶2 We restate the issue as follows: Did the District Court properly set aside the termination of parental rights and void the decree of adoption?

## BACKGROUND

¶3 A.L.O. was born to Mother and Father on July 26, 2004. At the time, Mother was sixteen years old. Although unmarried, Mother and Father, who had been dating for over a year, initially intended to raise A.L.O. After three weeks, however, the couple decided they could not handle the responsibility. Father approached his sister, Jennifer Martin, and asked her if she and her husband, Branch, would be interested in adopting A.L.O. The Martins, who were five months pregnant with their own child at the time, agreed. Mother and Father entered a "guardianship agreement" with the Martins, who then proceeded with adopting A.L.O., taking custody of her in August 2004. The District

2

Court signed an order on November 4, 2004, terminating Mother's and Father's parental rights.

¶4 Throughout the relinquishment and adoption processes, Mother represented her age as over eighteen. On all documents to effectuate the adoption, Mother signed her birth date as June 29, 1986. All parties to the proceedings apparently believed this representation, including Father, the Martins, counselors and doctors. In fact, Mother was born in 1987, which means at the time she received counseling and signed papers relinquishing her parental rights, Mother was only seventeen years old. Section 42-2-405(2), MCA, requires that minors relinquishing parental rights in direct parental placement adoption must have legal counsel throughout proceedings. In violation of this statutory provision, Mother did not have such counsel. The Martins, on the other hand, had a lawyer throughout.

¶5 On December 23, 2004—over thirty days after termination—Mother filed a motion to set aside the adoption. Mother asserted that since she was under eighteen years of age and not represented by legal counsel at the time she signed the relinquishment paperwork, the court's order of termination was void.

¶6 Mother noted that while she incorrectly stated her age on documents to effectuate the adoption, she accurately reported her birth year as 1987 on the certified paternity acknowledgment and to her Ob/Gyn. Mother testified that she misstated her age at times because she did not want Father to "dump" her. Mother believed she had nothing to gain in the adoption proceedings by misrepresenting her age on certain documents; she further

3

testified that she proceeded with the adoption based on her understanding that it would not be final for six months. Mother also claimed that she suffered from postpartum depression when she received counseling to give up her daughter and felt pressured by the Martins to relinquish her parental rights.

¶7 The Martins countered that Mother signed document after document indicating that she had read all the necessary paperwork and understood that relinquishing her parental rights was irrevocable. The Martins further noted that M.L. Knapp, a case worker with the Lutheran Social Services (who provided services through a contract with the Martins), had no documentation of Mother's claims of depression or having second thoughts about relinquishing her parental rights.

¶8 On February 28, 2005, the District Court declared the adoption decree null and void and ordered the return of A.L.O. to her Mother.[1] The Martins appeal.

## STANDARD OF REVIEW

¶9 We review a district court's conclusions of law to determine whether those conclusions are correct. Because the termination of parental rights involves a fundamental liberty interest, a decree which purports to terminate such rights must be supported by clear and convincing evidence. "Clear and convincing evidence" in the context of a parental rights termination case exists where the evidence is definite, clear, and convincing, or a particular issue is clearly established by a preponderance of

---

[1]Father's parental rights remain terminated.

4

evidence or by clear preponderance of the proof. *Adoption of C.R.N.*, 1999 MT 92, ¶ 7, 294 Mont. 202, ¶ 7, 979 P.2d 210, ¶ 7.

## DISCUSSION

¶10 **Did the District Court properly set aside the termination of parental rights and order as void the decree of adoption?**

¶11 Section 42-2-405(2), MCA, instructs that "[i]n a direct parental placement adoption, a relinquishment and consent to adopt executed by a parent who is a minor is *not valid unless the minor parent has been advised by an attorney* who does not represent the prospective adoptive parent." (Emphasis added.) In addition, the legal fees "are an allowable expense that may be paid by prospective adoptive parents . . . ." Section 42-2-405(2), MCA. The Martins acknowledge that they knew of the above statutory requirement, but did not provide Mother a lawyer because Mother led them to believe she was of legal age. Mother testified that she did not know that as a minor she should have had an attorney; she also did not know that the Martins would have paid for her legal representation.

¶12 The Martins set forth several theories for why this Court should reverse the District Court's order and return A.L.O. to their care, including equitable estoppel, judicial estoppel, and failure to file a timely appeal under Rule 5(a)(1), M.R.App.P. In light of § 42-2-405(2), MCA, these arguments are unpersuasive. Section 42-2-405(2), MCA, exists to protect minor parents from making legally binding direct parental placement adoptions without counsel's advice and representation. Mother testified that

5

she had difficulty understanding the paperwork related to the adoption, as it all looked the same to her. Mother also claims that Jennifer Martin and A.L.O.'s grandmother (Jennifer and Father's mother), called Mother once a day to encourage her to sign the papers, promising Mother that she would be able to visit with A.L.O. whenever she desired; Mother testified that she would not have given her daughter up for adoption if she had known that she would not be allowed to see A.L.O. any time she wanted. The foregoing demonstrates the importance of § 42-2-405(2), MCA—that is, the statute protects minors from making uninformed legal decisions. We hold that the District Court correctly concluded that it had no authority to order relinquishment of Mother's parental rights when she had no legal representation as mandated by § 42-2-405(2), MCA.

¶13 As a final note, the Martins argue that returning A.L.O. to the Martins serves the child's best interest, as A.L.O. has "a right to permanence and stability in adoptive placements." Section 42-1-108(d), MCA. Given that the court ordered A.L.O.'s return to Mother's custody over a year ago in February 2005, this argument fails.

¶14 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE

6