FILED

December 9 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0314

DA 14-0314

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 327

IN THE MATTER OF
K.J.B., a minor child,

RACHELLE MARIE BERGSING,

      Petitioner and Appellee,

   v.

ISAAC JAMES CARDONA,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DA-2014-3
                  Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Isaac James Cardona, Self-Represented, Sheridan, Oregon

        For Appellee:

                Jon M. Hesse, Jon M. Hesse, P.C., Livingston, Montana

Submitted on Briefs:  October 29, 2014
Decided:  December 9, 2014

Filed:

                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Isaac James Cardona appeals from an order of the Sixth Judicial District Court, Park County, terminating his parental rights by default judgment. We reverse.

¶2 The sole issue presented for review is whether the District Court abused its discretion when it terminated Cardona's parental rights.

**BACKGROUND**

¶3 Cardona and Rachelle Marie Bergsing are the parents of a daughter, K.J.B., born in 2010. Cardona is presently incarcerated at the Sheridan Federal Correctional Institution in Sheridan, Oregon. On March 27, 2014, Bergsing, through counsel, filed a petition to terminate Cardona's parental rights. In the petition, she stated that Cardona began serving his federal sentence when Bergsing was two to three months pregnant; that there was some contact by telephone and mail for a period of time after the child was born; and that Bergsing ceased all such contact when Cardona became threatening. She requested termination of Cardona's parental rights on the grounds that he had abandoned K.J.B. and failed to contribute to her support.

¶4 A summons and copy of the petition was personally served on Cardona on April 3, 2014. The summons stated that Cardona was required to file an answer to the petition within 21 days of service, or a default could be taken against him for the relief requested in the petition. The 21-day period ended April 24, 2014.

¶5 Cardona, who is unrepresented, attempted to comply with the summons and file his answer prior to April 24, 2014. We know this because on April 21, 2014, a deputy clerk of court sent a letter to Cardona indicating that his answer had been received, but would not be

2

filed until he submitted either a $70.00 filing fee or an affidavit substantiating his inability to pay. This letter does not appear in the District Court file. A copy of the letter was retained by Cardona and is appended to his brief on appeal. No answer from Cardona was filed within this time, and on April 25, 2014, Bergsing moved for entry of default based on Cardona's failure to answer the petition. Default was entered by the clerk of court the same day.

¶6 Cardona continued his attempts to file an answer. The affidavit of inability to pay required a notarized signature. On May 1, 2014, Cardona sent an inmate request for the services of a notary. He received a response from a prison staff member indicating that a notary would be arranged only if a stamp from his case manager was first rejected. Cardona was not able to have the affidavit notarized until May 13, 2014. Cardona has appended his requests and prison staff correspondence to his brief on appeal.

¶7 Meanwhile, on May 1, 2014, the District Court entered a default judgment terminating Cardona's parental rights based solely on his failure to answer the petition. No hearing was held, and the District Court made no findings as to whether Bergsing had demonstrated any statutory grounds for the termination of Cardona's parental rights. A copy of the judgment was mailed to Cardona later that day. Cardona filed a notice of appeal in this Court on May 23, 2014.

¶8 On May 29, 2014, a deputy clerk of court sent a second letter indicating that Cardona's notarized affidavit of inability to pay had been received, but was being returned on the grounds that it appeared not to be an original document. Cardona was asked to resubmit the original. This letter also does not appear in the District Court file and is

3

appended to Cardona's brief on appeal. Cardona's affidavit was ultimately filed in the District Court on June 18, 2014, over a month after his parental rights had been terminated by default judgment. The District Court then entered an order allowing Cardona to file pleadings without payment of fees. Cardona's answer was never filed.

## STANDARDS OF REVIEW

¶9 We review a district court's decision to terminate parental rights for abuse of discretion. *In re M.O.*, 2003 MT 4, ¶ 10, 314 Mont. 13, 62 P.3d 265. A court abuses its discretion where it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *In re A.S.*, 2006 MT 281, ¶ 24, 334 Mont. 280, 146 P.3d 778. Finally, we review a district court's findings of fact for clear error and its conclusions of law for correctness. *M.O.*, ¶ 10.

## DISCUSSION

¶10 *Whether the District Court abused its discretion when it terminated Cardona's parental rights.*

¶11 A petition to terminate parental rights may be filed in either of two circumstances: in cases of abuse and neglect of a child under Title 41; or where the child is the subject of an adoption proceeding under Title 42. Sections 41-3-422, -607, 42-2-603, MCA. A termination proceeding under Title 41 may only be initiated by the State and must be accompanied by an affidavit by the Department of Public Health and Human Services (Department) stating that the child appears to have been abused and neglected. Section 41-3-422(2), MCA. Title 41 defines specific circumstances in which a parent's rights may be terminated by a court. Section 41-3-609(1), MCA. One of the grounds for

4

termination is a finding by clear and convincing evidence that the child has been abandoned by the parent. Section 41-3-609(1)(b), MCA. Abandonment includes willfully surrendering physical custody of the child for a period of six months, without manifesting a firm intention to resume physical custody or otherwise make permanent arrangements for the care of the child. Section 41-3-102(1)(a)(ii), MCA.

¶12 A petition for termination of parental rights under Title 42 may be filed by the Department, a licensed child-placement agency, a prospective adoptive parent to whom a relinquishment of parental rights has been issued, or a guardian with custody of the child. Section 42-2-603, MCA. Additionally, a stepparent may petition for termination of parental rights in conjunction with a petition for adoption. *In re Adoption of K.P.M.*, 2009 MT 31, ¶ 14, 349 Mont. 170, 201 P.3d 833. A court may terminate parental rights "to a child who is the subject of an adoption proceeding" based on several grounds, one of which is a determination that the parent is unfit. Section 42-2-607(2), MCA. A court may find a parent unfit, and terminate parental rights "for purposes of making a child available for adoption," if the parent has willfully abandoned the child, as defined in § 41-3-102, MCA, or has not contributed to the support of the child for an aggregate period of one year prior to the filing of a petition for adoption. Section 42-2-608(1)(b), (c), MCA. Parental rights may be terminated under Title 42 only for the purpose of making a child legally available for adoption. The termination procedures under Title 42 may not be used if the child is not the subject of a prospective adoption.

¶13 Bergsing's petition to terminate Cardona's parental rights relied on Cardona's alleged abandonment of K.J.B., pursuant to § 41-3-102(1)(a)(ii), MCA, and failure to support K.J.B.,

pursuant to § 42-2-608(1)(c), MCA. Abandonment, as defined in § 41-3-102, MCA, may be grounds for a determination that a parent is unfit under § 42-2-608(1)(b), MCA. Thus, despite her citation to Title 41, it appears that Bergsing intended to proceed under Title 42. We conclude, however, that under either process, her petition must fail. A petition under Title 41 must be filed by the State and accompanied by an affidavit by the Department. Section 41-3-422(2), MCA. Bergsing's petition was not initiated by the State and is not accompanied by an affidavit by the Department.

¶14 A petition under Title 42 may be filed only if the child is the subject of an adoption proceeding. Section 42-2-607(2), MCA. There is no indication in the District Court record, and no assertion by either party on appeal, that K.J.B. was the subject of an adoption proceeding. The parties permitted to file a petition under Title 42 are the Department, a licensed child-placement agency, a prospective adoptive parent to whom a relinquishment of parental rights has been issued, a guardian with custody of the child, or a stepparent. Section 42-2-603(2), MCA; *K.P.M.*, ¶ 14. There is no provision allowing a custodial natural parent to petition for termination of the rights of the child's other natural parent. Bergsing's petition for termination of Cardona's parental rights was therefore inappropriate in the first instance.

¶15 Moreover, neither Title 41 nor 42 allow for the termination of parental rights based solely on the failure to timely file an answer to a petition for termination due to an inability to pay the filing fee. *See* §§ 41-3-609, 42-2-607, MCA. Title 41 contemplates entry of default judgment only after a parent, served by publication with notice of a hearing on the petition, fails to appear at that hearing. Section 41-3-429(4)(b)(vii), MCA; *see also In re*

6

*A.T.*, 2006 MT 35, ¶ 32, 331 Mont. 155, 130 P.3d 1249 (Gray, C.J., dissenting). Service by publication must include notice to the parent that "failure to appear at the hearing will constitute a denial of interest in the child, which denial may result, without further notice of this proceeding or any subsequent proceeding, in judgment by default being entered for the relief requested in the petition." Section 41-3-429(4)(b)(vii), MCA. Thus, Title 41 requires a hearing to take place before any judgment, including a default judgment, can be entered. It also provides for the appointment of counsel for an unavailable parent, making default rare even in cases where the parent cannot be located. Section 41-3-422(7), MCA; *A.T.*, ¶ 32 ("I am unpersuaded that a default judgment could be authorized when, as here, counsel appears on behalf of a parent who does not personally appear.").

¶16 When a petition is filed under Title 42, the court "shall hold a hearing as soon as practical to determine the identity of and terminate the parental rights of the parents of the child." Section 42-2-606(1), MCA. Notice of the hearing must be served on a putative or presumed father or other parent, and must include notice that failure to appear at the hearing "constitutes a waiver of the individual's interest in custody of the child and will result in the court's termination of the individual's rights to the child." Section 42-2-605(1), (2), MCA. Thus, although Title 42 does contemplate termination of parental rights resulting from a parent's failure to appear, a hearing must be conducted first. No hearing was conducted in this case. As a result, the record in this case is so deficient that it is unclear how, or whether, Cardona's paternity of K.J.B. was legally determined. *See* § 42-2-606, MCA.

¶17 The procedures utilized in this case cast serious doubt on the fairness of these proceedings. Under either Title 41 or 42, an order or decree purporting to terminate parental

7

rights must be supported by clear and convincing evidence. Section 41-3-422(5)(a)(iv), MCA; *In re Adoption of A.L.O.*, 2006 MT 59, ¶ 9, 331 Mont. 334, 132 P.3d 543. In this case, the District Court was presented with nothing beyond the allegations contained in Bergsing's petition and the affidavit by her attorney stating that Cardona had failed to file a timely answer. The District Court entered no findings and made no reference to the statutory criteria for termination of parental rights. *See* §§ 41-3-609, 42-2-607, MCA.

¶18     A parent's right to the care and custody of a child is a fundamental liberty interest, and must be protected by fundamentally fair procedures. *In re Adoption of A.W.S. & K.R.S.*, 2014 MT 322, ¶ 25, __Mont.__, ___P.3d___; *A.S.*, ¶ 24. A parent may not be placed at an unfair disadvantage during the termination process. *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282. Cardona was incarcerated, indigent, and without legal counsel. Yet it appears that in spite of those circumstances, he acted diligently to protect his rights to his daughter, K.J.B. He submitted a timely answer to the petition, which was rejected by the clerk of court for reasons wholly attributable to his indigence, incarceration, and lack of counsel. He then took prompt steps to comply with filing requirements and did so to the best of his ability, considering his circumstances. The procedures employed in this case— namely, the termination of parental rights for failure to file an answer on one hand, while simultaneously refusing to accept that very answer on the other—were not fundamentally fair and placed Cardona at a practically insurmountable disadvantage.

¶19     In her brief on appeal, Bergsing urges this Court to consider the termination of Cardona's parental rights as we would an ordinary default judgment in a civil case. This argument disregards the particular statutes applicable to termination of parental rights and

8

the procedures required to protect a parent's fundamental liberty interest in the care and custody of a child. Bergsing cites *Board of Directors of Edelweiss Owners' Assn. v. McIntosh*, 251 Mont. 144, 822 P.2d 1080 (1991), and *In re Marriage of McDonald*, 261 Mont. 466, 863 P.2d 401 (1993). *Edelweiss* was a dispute over the management of a condominium project, and has no application to the particular circumstances of this case. 251 Mont. at 146, 822 P.2d at 1081.

¶20 *McDonald* addressed the custody of a child, but did not involve the termination of parental rights. 261 Mont. at 467, 863 P.2d at 401. In that case, the father failed to respond to the mother's petition for dissolution of their marriage, due to his mistaken belief that he would be given an opportunity to review the custody arrangements before a final decree was entered. *McDonald*, 261 Mont. at 469, 863 P.2d at 403. After a hearing at which the mother presented evidence, a default judgment was entered granting her custody of the parties' minor child. *McDonald*, 261 Mont. at 467, 863 P.2d at 401-02. We declined to set aside the default judgment after considering the following criteria: whether the defaulting party proceeded with diligence; whether the defaulting party's neglect was excusable; whether the defaulting party had a meritorious defense to the claim; and whether the judgment, if permitted to stand, would affect the defaulting party injuriously. *McDonald*, 261 Mont. at 468, 863 P.2d at 402 (citing *Blume v. Metro. Life Ins. Co.*, 242 Mont. 465, 467, 791 P.2d 784, 786 (1990)); *see also JAS, Inc. v. Eisele*, 2014 MT 77, ¶ 34, 374 Mont. 312, 321 P.3d 113.

¶21 Bergsing's reliance on *McDonald*, like her reliance on *Edelweiss*, is misplaced. *McDonald* did not address the termination of parental rights, and thus the statutory

9

procedures that must be strictly followed in this case were not applicable. *See In re Adoption of J.B.T.*, 250 Mont. 205, 208, 819 P.2d 178, 179 (1991). In *McDonald*, unlike in this case, the mother's petition for dissolution of marriage was properly filed, a hearing was held in the father's absence, and the mother presented evidence in support of her petition.

¶22 Furthermore, if *McDonald* were applicable, it would ultimately support Cardona's position. Cardona proceeded with diligence, preparing an answer and submitting it to the clerk of court in a timely manner. When notified of the requirement to submit an affidavit of inability to pay, he moved promptly to have the affidavit notarized. The delay in doing so was attributable to federal prison procedures, rather than neglect by Cardona. Cardona's failure to timely file an answer was therefore excusable due to his circumstances as an unrepresented, indigent prisoner, incarcerated in a federal prison in another state. Cardona has a meritorious defense, because Bergsing's petition is not permitted by law. The judgment, if permitted to stand, will affect Cardona injuriously by permanently depriving him of his fundamental interest in the care and custody of his daughter, K.J.B., without respect to statutory requirements or due process. If this were an ordinary default judgment, we would be compelled to set it aside under this standard. This is not an ordinary civil default, but the permanent severance of a father's legal relationship with his infant daughter. Cardona is entitled to a fundamentally fair process, which was not provided in this case.

## CONCLUSION

¶23 The District Court incorrectly applied the law when it terminated Cardona's parental rights without a concomitant petition for adoption and by a default judgment with no hearing, no evidence, and no findings. Accordingly, the District Court's decision to

10

terminate Cardona's parental rights by default judgment exceeded the bounds of reason and resulted in substantial injustice. We conclude the District Court abused its discretion when it terminated Cardona's parental rights.

¶24    Reversed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER