FILED

January 26 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 15-0218

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 22

IN THE MATTER OF THE ADOPTION OF:
A.M.S., M.A.S., and A.W.S, minor children,

> Petitioners and Appellees,

> v.

W.S.,

> Respondent and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DA 14-048
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Wesley A. Schwartz, self-represented, Los Angeles, California

For Appellees:

Kevin T. Sweeney, Attorney at Law, Billings, Montana

Submitted on Briefs:   January 6, 2016

Decided:   January 26, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    W.S. (Father) appeals from the orders of the Thirteenth Judicial District Court, Yellowstone County, terminating his parental rights to A.M.S., M.A.S., and A.W.S., and entering decrees of adoption in favor of C.J. (Grandfather).   In accordance with M. R. App. P. 10(6), we have amended the caption to remove the full names of all involved parties.  We restate the dispositive issues on appeal:

*1. Whether Father was properly served by publication.*

*2.   Whether the District Court erred in granting the petition for adoption and termination.*

¶2    We reverse and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Father and J.J. (Mother) are the biological parents of minor children, A.M.S., M.A.S., and A.W.S.  Grandfather is the children's maternal grandfather.  Although the record on appeal is quite limited, it is undisputed that Father and Mother married in 2005 and divorced in 2013.  Mother and Grandfather currently reside in Billings, Montana, and Father resides in Los Angeles, California.

¶4    On July 1, 2014, Mother and Grandfather filed a joint petition for termination of Father's parental rights and for Grandfather to adopt the children.  Under the petition, Mother would maintain her parental rights.  The District Court issued a summons for Father on the same day the petition was filed.

¶5    After attempting to serve Father, whose exact whereabouts in Southern California were unknown at the time, Mother's and Grandfather's counsel submitted an affidavit on

2

October 14, 2014, stating that Father could not be found and requesting that the District Court order publication of summons. On October 15, 2014, the Clerk of Court entered an order directing that service of the summons be made upon Father by publication in the *Billings Times* newspaper.

¶6 Father did not respond to the summons. On December 12, 2014, Mother and Grandfather filed a motion for entry of default. The Clerk of Court entered default against Father three days later on December 15, 2014.

¶7 The District Court held a hearing on March 13, 2015. During the seven-minute hearing, Grandfather and Mother testified and submitted one exhibit. The exhibit included the following documents: a letter from Grandfather's and Mother's counsel to a California-based process server; a letter to Father at a Billings address regarding the proceedings; an e-mail to Father regarding the proceedings; and a number of pictures of Father from various social media sites. Father did not provide on appeal, and the record does not contain, a hearing transcript. At the close of the hearing, the District Court issued combined written orders terminating Father's parental rights and granting decrees of adoption for each of the children.[1]

**STANDARD OF REVIEW**

¶8 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re the Matter of the Termination of the Parental Rights and Adoption of:*

---

[1] We consolidated the three orders following Father's appeal. Although we referred Father to determine eligibility for participation in the Court's Appellate Pro Bono Program, at Father's request he continues to be self-represented in this appeal.

3

*J.W.M. & A.K.M.*, 2015 MT 231, ¶ 11, 380 Mont. 282, 354 P.3d 626. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *J.W.M.*, ¶ 11. This Court reviews a district court's interpretation and application of statutes for correctness, and its findings of fact to determine whether the findings are clearly erroneous. *In re the Parenting of S.J.H. & J.B.H*, 2014 MT 40, ¶ 8, 374 Mont. 31, 318 P.3d 1021.

## DISCUSSION

¶9 It is well established that parental rights are a fundamental liberty interest that "must be protected by fundamentally fair procedures." *In the Matter of K.J.B.*, 2014 MT 327, ¶ 18, 377 Mont. 270, 339 P.3d 824 (citing *In re Adoption of A.W.S. & K.R.S.*, 2014 MT 322, ¶ 25, 377 Mont. 234, 339 P.3d 414); *In re the Matter of J.N. & A.N.*, 1999 MT 64, ¶ 12, 293 Mont. 524, 977 P.2d 317. Accordingly, "a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights." *J.N.*, ¶ 12 (citing *In re Declaring E.W., C.W., & A.W.*, 1998 MT 135, ¶ 12, 289 Mont. 190, 959 P.2d 951). Because an order terminating parental rights implicates a fundamental liberty interest, it must be supported by "clear and convincing evidence that the statutory criteria for termination have been met." *J.N.*, ¶ 12 (citing *E.W.*, ¶ 12).

¶10 *1. Whether Father was properly served by publication.*

¶11 Title 42, MCA, governs the termination of parental rights when a child is the subject of an adoption proceeding. Sections 42-2-601 to -620, MCA. Under § 42-2-605(1), MCA, notice of a hearing on a petition for termination of parental rights

4

"must be served in any manner appropriate under the Montana Rules of Civil Procedure or in any manner that the court may direct . . . ." The notice must inform the individual whose rights will be terminated "that failure to appear at the hearing constitutes a waiver of the individual's interest in custody of the child and will result in the court's termination of the individual's rights to the child." Section 42-2-605(2), MCA.

¶12 Father argues that the clerk's order for publication was improper and that service may not be made by publication in a proceeding to terminate parental rights. Mother and Grandfather respond that service by publication is proper under § 42-2-605(1), MCA. They further contend that they "followed both the letter and the spirit of this law."

¶13 The Montana Rules of Civil Procedure authorize service by publication in four enumerated situations. M. R. Civ. P. 4(o)(1)(A)-(D). A parental rights termination proceeding is not one of the listed situations. Nevertheless, service by publication is permitted by statute in parental rights termination proceedings brought under both Title 41 and Title 42. Sections 41-3-428 and -429, MCA, authorize service by publication in child abuse and neglect cases and specify the requirements for service in those cases. Section 42-2-605(1), MCA, provides for service of a notice of hearing on a petition for termination of parental rights brought in conjunction with an adoption proceeding "in any manner appropriate under the Montana Rules of Civil Procedure or in any manner that the court may direct on . . . a person who is recorded on the child's birth certificate as the child's father; . . . or . . . a parent . . . of the child in question who has not waived notice." We have observed that this statute allows a district court to order service by publication

5

even though that method of service is not otherwise allowed by M. R. Civ. P. 4(o). *M.B.J. v. Fourth Judicial Dist. Ct.*, 2010 Mont. LEXIS 515, *8, No. OP 10-0345 Or. (Mont. Oct. 6, 2010) (granting petition for writ of supervisory control and directing district court to order service of putative father(s) by publication).

¶14    Because § 42-2-605(1), MCA, provides for alternate service "in any manner that *the court* may direct" (emphasis added), publication may not be ordered by the clerk in the manner provided by M. R. Civ. P. 4(o)(3)(B). Rather, the court must direct the manner of alternate service in order for it be sufficient under § 42-2-605(1), MCA. Here, the Clerk of Court, not the District Court, entered the order directing service by publication. Service therefore was improper.

¶15    Service by publication further was insufficient because the publication did not put Father on notice that his parental rights would be terminated as required by § 42-2-605(2), MCA. The affidavit of publication in the record contains a copy of the published notice:

> IN THE MATTER OF THE ADOPTION OF A.M.S.
>
> .   .   .
>
> THE STATE OF MONTANA SENDS GREETINGS TO RESPONDENT [FATHER]:
>
> You are hereby summoned to respond to the petition in this action which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your response and serve a copy thereof upon the co-petitioners' attorney within twenty-one (21) days after the service of this Summons, exclusive of the date of service; and in case of your failure to respond, judgment will be taken against you by default for the relief requested in the petition.

6

. . .

Although the notice informed Father that if he did not respond "judgment [would] be taken against [him] by default for the relief requested in the petition," it did not specify the relief requested. The notice therefore failed to inform Father "that failure to appear at the hearing constitutes a waiver of [his] interest in custody of the child and will result in the court's termination of [his] rights to the child." Section 42-2-605(2), MCA.

¶16 The District Court incorrectly applied the statutes governing service of the petition and notice of the hearing on Father. We conclude that Father was not properly served by publication.

¶17 *2. Whether the District Court erred in granting the petition for adoption and termination.*

¶18 Although our holding on Issue 1 requires reversal of the District Court's orders and decrees, we address Father's legal challenges to the termination and adoption in the event that service is perfected on remand.

¶19 Father relies on *K.J.B.* to assert that Mother and Grandfather were not permitted to bring the petition to terminate and adopt "in the first instance." He argues that Grandfather and Mother are not parties who may bring a petition for termination under § 42-2-603(2), MCA, and that Grandfather is not a stepparent who may bring a petition for termination of parental rights in conjunction with a petition for adoption. Father therefore contends that the District Court lacked authority to terminate his parental rights.

7

¶20    *K.J.B.* does not support Father's argument in this case.  In *K.J.B.*, the mother sought termination of the father's parental rights, but the parties' child was not the subject of an adoption proceeding.  *K.J.B.*, ¶¶ 3, 14.  We therefore concluded that the mother could not bring the petition because a petition for termination of parental rights "under Title 42 may be filed only if the child is the subject of an adoption proceeding." *K.J.B.*, ¶ 14 (citing § 42-2-607(2), MCA).   Here, the children are the subject of an adoption proceeding.

¶21    Under Title 42, "[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption."  Section 42-1-107(1), MCA.  Section 42-2-602(1), MCA, provides that "a child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court: (1) as provided in this title . . . ."   Mother and Grandfather joined a petition for termination of parental rights with a petition for adoption—a procedure that Title 42 authorizes for stepparent adoptions. Section 42-4-302(3), MCA (providing that "[a] petition for adoption by a stepparent may be joined with a petition for termination of parental rights"); § 42-4-310, MCA (providing in pertinent part that "[a] stepparent who desires to adopt a stepchild shall obtain an order of termination of parental rights of the child's noncustodial parent prior to *or contemporaneously with* the petition to adopt. . . ." (emphasis added)).   *See J.W.M.* (reviewing a petition for termination and adoption brought by mother and stepfather); *In re the Adoption of K.P.M.*, 2009 MT 31, ¶ 45, 349 Mont. 170, 201 P.3d 833 (Nelson, J., dissenting) (observing that "a stepparent may join

8

[his or her] petition for adoption with the natural parent's petition for termination of parental rights"). If the petitions are joined, both the required contents for a termination of parental rights petition under § 42-2-604, MCA, and the required contents for an adoption petition under § 42-5-101, MCA, must be included. Furthermore, a petition for adoption and a petition for termination may be brought only by the proper parties. Sections 42-2-603(2) and 42-1-106, MCA.

¶22 Section 42-2-603(2), MCA, provides that a petition for termination of parental rights may be filed by "a guardian with custody of the child . . . ." Although these terms are not defined in Title 42, we find it appropriate to consult other provisions of the Montana Code to ascertain their meaning. When a word is defined in any part of the MCA, the same definition applies "wherever it occurs, except where a contrary intention plainly appears." Section 1-2-107, MCA. *See In re the Matter of the Conservatorship of Minor Children, J.S., K.S., & R.S.*, 2015 MT 335, ¶¶ 14-15, 381 Mont. 462, ___ P.3d ___ (applying statute in Title 40, MCA, to ascertain duties of guardian ad litem under § 25-5-301, MCA). "Guardian" is defined in Title 41 as "an adult: (a) who is responsible for a youth and has the reciprocal rights, duties, and responsibilities with the youth; and (b) whose status is created and defined by law." Section 41-5-103(21), MCA. *See also Black's Law Dictionary*, 822 (Bryan A. Garner ed., 10th ed. 2014) (defining "guardian" as "[s]omeone who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability"). Title 40 defines the "parent and child relationship" as "the legal relationship existing between a child and

9

the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship." Section 40-6-102(2), MCA. Parental authority over a child ceases upon a court's appointment of a guardian or when the child marries or attains majority. Section 40-6-234, MCA. A parent's legal rights, powers, and obligations also are divested by a decree terminating the parent-child legal relationship. Section 41-3-611, MCA. "Physical custody" is "the physical care and supervision of a child." Section 40-7-103(14), MCA.

¶23 As the children's natural mother who undisputedly has physical custody of the three children, Mother is a "guardian with custody of the child[ren]" within the meaning of § 42-2-603(2), MCA. She has standing to bring a petition for termination, provided that the children are the subject of a proper adoption proceeding.[2]

¶24 Section 42-1-106, MCA, provides that the following individuals have standing to adopt a child if they otherwise meet the requirements of Title 42:

(1) a husband and wife jointly or either the husband or wife if the other spouse is a parent of the child;

(2) an unmarried individual who is at least 18 years of age; or

---

[2] In *K.P.M.* we concluded that a stepparent had standing to petition for termination of the non-custodial parent's rights. *K.P.M.*, ¶ 14. In that case, the stepparent's petition initially sought only adoption but later was amended to include a petition for termination. *K.P.M.*, ¶ 7. The custodial natural parent was not named as a party. Because we conclude that Mother has standing to seek termination of Father's rights in this proceeding, we do not address whether Grandfather independently would have standing to petition for termination.

10

(3) a married individual at least 18 years of age who is legally separated from the other spouse or whose spouse has judicially been declared incompetent.

Because Mother is not relinquishing her children for adoption but seeking their adoption under the stepparent adoption procedures, the requirements of Title 42 "otherwise" applicable in this case are those contained in Title 42, chapter 4, part 3, MCA.

¶25 Under our case law, a "stepparent" is normally "someone who is married to a child's biological parent." *In the Matter of J.B.*, 2015 MT 342, ¶ 19, 381 Mont. 525, ___ P.3d ___ (citations omitted). Section 42-4-302(2), MCA, however, provides that "[f]or good cause shown, a court may allow an individual who is not the stepparent but who has the consent of the custodial parent of a child to file a petition for adoption." Such a petition "must be treated as if the petitioner were a stepparent." Section 42-4-302(2), MCA. In that case, the petition for adoption "may be joined with a petition for termination of parental rights." Section 42-4-302(3), MCA. The District Court made no findings of fact on Grandfather's standing under either § 42-1-106 or § 42-4-302(2), MCA.

¶26 On remand, and if service is effected properly on Father, the District Court may allow the petition to proceed if it first determines that there is "good cause" for Grandfather to be treated as a "stepparent" under § 42-4-302(2), MCA, and that he meets the qualifications set forth in § 42-1-106, MCA. If the court so finds, it then may move forward with proceedings on the termination of Father's parental rights in accordance with § 42-4-310, MCA, "prior to or contemporaneously with the petition to adopt."

11

**CONCLUSION**

¶27    We reverse the District Court's order terminating Father's parental rights and remand for further proceedings consistent with this opinion.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE